The **BAY GUARDIAN COMPANY**, a corporation, et al., Plaintiffs,

v.

The **CHRONICLE PUBLISHING COMPANY** et al., Defendants.

No. C–70 1613.

United States District Court,
N. D. California.

Feb. 24, 1972.

Stephen R. Barnett, Berkeley, Cal., Charles Cline Moore, Haizlip, Ring, O'Donnell & Moore, San Francisco, Cal., for plaintiffs.

James J. Brosnahan, Cooper, White & Cooper, W. J. Dowling, Jr., William J. Dowling, III, David L. Bacon, Garret McEnerney, II, McEnerney & Jacobs, San Francisco, Cal., for defendants.

## ORDER

OLIVER J. CARTER, Chief Judge.

The plaintiffs in this action are a small monthly newspaper company and its husband and wife owners and operators. They assert four basic claims against the publishers of the large San Francisco metropolitan dailies, the Chronicle and the Examiner. Also named as defendants are the individual publishers of those papers, Charles Thieriot and R. A. Hearst and the San Francisco Newspaper Publishing Company.

The plaintiffs contend:

1. That the recently enacted Newspaper Preservation Act (henceforth Newspaper Act), (15 U.S.C. §§ 1801–1804) is unconstitutional. This claim has two thrusts; that the act abridges the First amendment guarantee of freedom of the press, and that it violates equal protection of the law.

2. That the defendants have violated Section 7 of the Clayton Anti-Trust Act. (15 U.S.C. § 12 et seq.).

3. That the defendants have violated Section 1 of the Sherman Anti-Trust Act (15 U.S.C. § 1).

4. That the defendants have violated the California Cartwright Anti-Trust Act (Business and Professions Code § 16700, et seq.)

Within these principal claims there are numerous side issues and subdivisions.

The defendants have moved to dismiss all claims asserting as to various ones lack of federal jurisdiction, lack of standing, and failure to state a claim.

In addition to the Newspaper Act itself, the principal issue in the action is a joint operating agreement between the newspaper defendants in September 1965. Pursuant to that agreement the defendant newspapers jointly fix their advertising and circulation rates. They also pool all profits and split them on a 50/50 basis. Thus the defendant newspapers have eliminated all economic competition between themselves. Since they are the only general circulation dailies in the City they thereby eliminated all competition in the San Francisco market area.

A similar agreement between Tucson, Arizona newspapers was held to be a per se violation of Section 1 of the Sherman Act by the United States Supreme Court in Citizen Publishing Co. v. United States, 394 U.S. 131, 89 S.Ct. 927, 22 L. Ed.2d 148 (1969). The Newspaper Act was passed by Congress to nullify in part that decision.[1] It was also intended specifically for the purpose of validating existing agreements.[2] The Newspaper Act creates a limited exemption from antitrust laws for certain types of newspapers which can meet certain qualifications.

The plaintiffs' first causes of action[3] allege that the Newspaper Act is unconstitutional. They contend that the defendants' joint operating agreement bestows such complete monopoly power that the plaintiff *Bay Guardian* cannot compete. This power, they contend, is "validated" by the Newspaper Act. This "validation", they argue, commits Congress on the side of certain publishers and enables those chosen few free rein to ruin the rest. In that way freedom of the press is trampled and equal protection overthrown. Plaintiffs seek a declaratory judgment that the Newspaper Act is unconstitutional.

## JURISDICTION

The defendants claim that the Court lacks jurisdiction over the subject matter of that cause of action. The complaint posits the jurisdiction upon 28 U. S.C. § 1331(a) claiming that a "federal question" is presented. The "federal question" is whether the Newspaper Act is constitutional. The Court believes that the position of the defendants is sound and that 28 U.S.C. § 1331(a) does not support jurisdiction in the circumstances of this case. A very similar situation was ruled on by the United States Supreme Court in Louisville and Nashville R. R. Co. v. Mottley, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). In that case the plaintiffs also sought to have the court strike down as unconstitutional an Act of Congress. The court in examining the factual situation found that in reality the damage to the plaintiff was caused by the private act of the railroad not the statute. The court stated:

"It is not enough that the plaintiff alleges some anticipated defense to his cause of action, and asserts that the

---

1. Section 1804(a) refers specifically to reinstatement of any joint operating agreement already held to violate antitrust laws.

2. Section 1804(b) refers specifically to any antitrust actions pending.

3. The same underlying claim has been stated in two causes of action, one by the Bay Guardian Company and one by the Brugmanns as individuals.

defense is invalidated by some provision of the Constitution of the United States. Although such allegations show that very likely, in the course of the litigation, a question under the Constitution would arise, they do not show that the suit, that is, the plaintiff's original cause of action, arises under the Constitution." (p. 152, 29 S.Ct. p. 43)

■■ The plaintiffs' position in the instant case differs in no important respect from that in the *Louisville* case. The conduct complained of is the monopolization of the San Francisco newspaper industry by the defendants. That an Act of Congress suspends the operation of the antitrust laws and brings about a strangle hold does not present a federal question. The private manipulation could well exist, and in fact did exist here since 1965, without the sponsorship of Congress. The Court finds therefore that no "federal question" is presented in the first cause of action within the meaning of 28 U.S.C. § 1331(a).[4]

The Court also notes that this conclusion comports with its earlier decision on the propriety of empaneling a three judge court. (Opinion Sept. 30, 1970, 318 F.Supp. 227) The Court does not indicate, however, whether the grounds for the earlier decision compelled the latter.

Even when the original stated ground for this Court's jurisdiction over the first cause of action is eliminated, the plaintiffs in their memorandum indicate other grounds for jurisdiction can be advanced.

■ Plaintiffs contend that the doctrines of pendent and ancillary jurisdiction support the Court's jurisdiction of the first cause of action. This contention does not seem well founded. The doctrine of pendent jurisdiction refers to the resolution of state and federal claims in one action. There is here no contention that the first cause of action presents a state cause of action. Ancillary jurisdiction is, as its name implies, the exercise of jurisdiction over certain peripheral aspects of a controversy that by themselves would not be cognizable in federal court. While the precise perimeters of these two forms of federal jurisdiction are not clear, the Court is of the opinion that they do not extend to the type of claim presented in the first cause of action. The theory behind both doctrines is that subsidiary matters should be determined in the same action as the main claim. The plaintiffs' first cause of action in the instant case is far and away the more crucial portion of their entire action. It does not seem wise or expedient for federal courts to let major questions be submitted to them by such a backdoor method as plaintiffs contend for. Accordingly, I hold that even if I could exercise pendent or ancillary jurisdiction, which I doubt, I should not. United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). See Wright, Law of Federal Courts 19–21.

Plaintiffs contend that this Court also has jurisdiction to consider the first cause of action because it has jurisdiction over the second cause of action under the antitrust laws. That contention is intricate for it presents the entire nub of the jurisdictional problem. There is no question that before the passage of the Newspaper Act the plaintiffs could sue the defendants under the antitrust laws. However, before the filing of the suit Congress enacted the Newspaper Act purporting to modify those laws. It is that partial repeal of the antitrust laws by the Newspaper Act that the plaintiffs attack in their first cause of action.

The two types of statutes are in no way equivalent and therefore it is not appropriate to lump them together for jurisdictional purposes. The antitrust

4. The fact that this action is brought under the Declaratory Judgment Act (28 U.S.C. § 2201, et seq.) does not affect the need to find jurisdiction. Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950).

laws confer jurisdiction; the Newspaper Act destroys or limits jurisdiction. Accordingly, an attack upon the Newspaper Act is an attack on a vacuum, an attack upon a withdrawal of the Court's jurisdiction.

In addition to the antithetical nature of the statutes in question there is a distinction between the factual bases supporting the plaintiffs' claims in the two causes of action. In the normal antitrust situation the plaintiff asserts that a private person has violated a certain statute. That private act constitutes a federal question because it has been made illegal by the federal statute. In contrast, the first cause of action of these plaintiffs seeks to base jurisdiction on an entirely different factual basis. The essence of that claim is that Congress, not a private party, did something that was illegal, eg. unconstitutional and therefore a federal question arose. The Congressional action being questioned, passage of the Newspaper Act, did not affect the plaintiffs. Indeed it was not aimed at them but at antitrust laws and the defendants.

■ The Court finds that the Newspaper Act was intended as a negative, a withdrawal of the very same antitrust jurisdiction relied upon in the second cause of action. Accordingly, jurisdiction for an attack upon such a statute cannot be based upon the existence of the antitrust jurisdiction it was enacted to limit. The antitrust jurisdiction surely is not enlarged by a partial withdrawal of that jurisdiction. To accept that a withdrawal of a part of something could create a greater whole would be logically absurd.

The Court is unpersuaded by plaintiffs' suggestion that physical inclusion of the first cause of action by reference to it in the second confers jurisdiction. This is so for the reasons cited above as well as an important principle of constitutional adjudication. If the plaintiffs were permitted to bring up the question of the constitutionality of the Newspaper Act in their antitrust claim they would circumvent the possibility that the Newspaper Act is not applicable to the defendant newspapers. The Act quite specifically provides various qualifications on its effectiveness. Thus in order to qualify for the antitrust exemption the participating newspapers must prove that at least one of them was a "failing newspaper". Even if the exemption would apply, the Newspaper Act specifically excludes from its terms "predatory pricing, and predatory practice, or any other conduct in the otherwise lawful operations of a joint newspaper operating arrangement which would be unlawful under any antitrust law if engaged in by a single entity." (§ 1803(c)).

It appears to the Court that there could be an alternative non-constitutional ground for holding the defendants accountable to the antitrust laws. Therefore it would be logically imprecise to conclude, as plaintiffs apparently have in their memoranda, that the Newspaper Act stands ineluctably in the way of the assertion of their Sherman and Clayton Act claims. Nowhere in their pleadings do they formally concede the applicability of the Act to the defendants' joint operating agreement. This Court does not believe that there is any logical justification for joining the antitrust cause of action with such a phantom constitutional claim. If and when the defendants establish the Newspaper Act as a defense the constitutional claim may well mature.

Accordingly, the Court determines that the first cause of action does not present a federal question and that it is not otherwise within the jurisdiction of the Court and must be dismissed. Additionally it appears that references to the first cause of action contained elsewhere in the complaint should be stricken.

## THE MERITS

The Court has based its determination of the jurisdictional issue in part upon the conclusion that the Newspaper Act is not yet properly raised in this action. The Court has taken this position reluctantly because of the great amount of

research and argument that both parties have expended upon the constitutional issues. The Court of course must hew to the course dictated by the decisions and authorities and cannot base jurisdiction upon the fond hopes of the parties.

■ The Court is of the opinion that the Newspaper Act can only be brought into this action as an affirmative defense to the antitrust claims. Thus it must be pled and proved by the defendants. The United States Supreme Court in United States v. First City National Bank, 386 U.S. 361, 87 S.Ct. 1088, 18 L. Ed.2d 151 (1966) so interpreted a similar antitrust exemption. This was also the view taken by this Court in the order of September 30, 1970, refusing to impanel a three judge court. It is also the view persuasively urged by the defendants in their opening memorandum.

> "The Newspaper Preservation Act constitutes nothing more than a defense to the alleged antitrust violations which plaintiffs claim to arise under the defendants' joint operating agreement. In fact, Congress itself has stated that the rule of law contained in the Act is but a redefinition of the 'failing company defense' for application to newspapers. (S.Rep.No.91–535, 91st. Cong., 1st. Sess. 4 (1969) H.R.Rep.No.91–1193, 91st. Cong. 2nd Sess. 10 (1970)." Defts.' Memorandum in Support of Motion to Dismiss, Sept. 18, 1970, pp. 5–6.

The defendants in this action have not yet interposed their answer to the complaint, but have sought by means of the motion to dismiss to overthrow the complaint on its own terms. They insinuate throughout their memoranda that the Newspaper Act is applicable herein and defeats various of the plaintiffs' claims, yet at the same time they assert that the Act is not yet before the Court.

Since the Court has accepted the position of the defendants that jurisdiction is lacking because the Act has not yet been properly raised, it is not only a matter of law, but of equity, that the defendants be now put to the choice of asserting the Act in their answer or waiving that defense. They cannot deny the presence of the Act in one breath and conjure it up in the next.

Applying the above finding that the Newspaper Act is a defense to be pled and proved, it is readily apparent that much of the motion to dismiss must be denied at this time, both because the legal issues are not yet fully joined and because there remain unresolved factual issues.

The only issues then remaining before the Court involve interpretation of the Sherman and Clayton antitrust laws and their application to the facts of this case.

The defendants contend that the second cause of action is "deficient" because the complaint does not specify the manner in which the defendants have combined, eg. whether it is a "stock" or "assets" case. The Court believes that the complaint is sufficiently specific to put the defendants on notice that the joint operating agreement constitutes the basis for the claim for relief. Since the agreement is not a hazy 'gentlemen's agreement' but a written and known document it is quite clear that the issues are or can be sufficiently framed to enable the defendants to answer.

■ As a portion of their motion to dismiss the second cause of action, the defendants also claim that the remedies available under Section 7 do not include treble damages. This Court has already ruled in another case, (Circle Star Theatre v. The Hearst Corp., D.C., 310 F. Supp. 390), involving the same defendant that a private right of action for treble damages may be entertained. The defendants present no reason or authorities that have caused the Court to change its views in the interim. Accordingly the motion to dismiss will be denied.

■ The defendants contend that the remedy of divestiture is not available to private litigants under Section 7. While the Court readily concedes that it is venturing into uncharted territory by enter-

taining the remedy of divestiture for a private litigant it is persuaded that such innovations should be encouraged. Thus in *Circle Star* (*supra*) the Court has refused to dismiss and continues to believe that it is in the interest of justice to allow litigants a broad brush with which to seek redress.

■ The defendants contend that the combination advertising rate utilized by the defendants cannot be the ground for a cause of action under Section 1 of the Sherman Act. The Court notes that in this case there are far more factors involved in the joint operating agreement than just the combination ad rate. The Court is persuaded that it is a factor which is relevant in viewing the antitrust effects in toto, rather than seriatim. Accordingly it will not dismiss that portion of the complaint dealing with the joint rate.

All four grounds for dismissal of the second cause of action of the Bay Guardian Company have been examined and found wanting. Accordingly the motion to dismiss will be denied. Insofar as motions on similar grounds were directed to the identical causes of action of the Brugmanns they will also be denied.

■ As to the causes of action alleged by the Brugmanns as individuals, the defendants contend that mere employees of the Guardian are not within the "target" area of the alleged antitrust violations. The Court believes that this is a factual question that cannot be determined upon a motion to dismiss. The United States Supreme Court in Standard Oil Co. v. Perkins, 395 U.S. 642, 89 S.Ct. 1871, 23 L.Ed.2d 599 (1969) indicated that a question of fact can be presented by persons of "mere employee" status.

The defendants have also moved to dismiss the individual claim of the Brugmanns on the ground that they are in no event entitled to equitable relief. The Court as to this contention believes that factual considerations not now before the Court may determine the appropriateness of equitable relief. Accord-

ingly the motions to dismiss the individual claims of the Brugmanns will be denied.

The Court believes that the reasons given above have disposed of all the various grounds advanced in support of the various motions of the defendants.

Accordingly, it is ordered that the first cause of action of the Bay Guardian and the first cause of action of the Brugmanns as individuals be, and the same are hereby dismissed.

It is further ordered that all adoptions by reference of the first cause of action contained in the second cause of action be, and the same are hereby stricken.

It is further ordered that all other motions be, and the same are hereby denied.