**STATE OF CALIFORNIA, Plaintiff–Appellee,**

v.

**AMERICAN STORES CO.; Alpha Beta Acquisition Corp.; Lucky Stores, Inc., Defendants–Appellants.**

**No. 88–6467.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 8, 1988.

Decided March 31, 1989.

Before WALLACE, POOLE and O'SCANNLAIN, Circuit Judges.

WALLACE, Circuit Judge:

American Stores Company (American Stores), one of the nation's largest grocery retailers, appeals from orders denying its motion to dismiss and granting a motion for preliminary injunction in favor of the State of California. American Stores acquired 100% of the stock of Lucky Stores, Inc. (Lucky), one of American Stores's major competitors in California. Approximately three months later, the California Attorney General initiated this antitrust action, both on his own behalf and in his capacity as *parens patriae* of the consumers of the state, challenging American Stores's acquisition of Lucky as a violation of section 7 of the Clayton Act, 15 U.S.C. § 18, section 1 of the Sherman Act, 15 U.S.C. § 1, and California's Cartwright and Unfair Competition Acts, Cal.Bus. & Prof. Code §§ 16700–16761 and 17200–17208 (West 1987 & Supp.1989). The district court granted California's request for preliminary relief and ordered American Stores to operate Lucky separately and refrain from integrating the two companies' assets. *California v. American Stores Co.*, 697 F.Supp. 1125, 1135–36 (C.D.Cal. 1988) (*American Stores*). We have jurisdiction pursuant to 28 U.S.C. § 1292(a)(1). We affirm in part and reverse and remand in part.

**I**

American Stores is California's fourth largest retail grocery chain, operating 252 "Alpha Beta" and "Skaggs Alpha Beta" (collectively Alpha Beta) supermarkets throughout the state. *Id.* at 1127. Lucky is the state's largest chain, operating 340 "Lucky Stores" and "Lucky Food Basket" supermarkets. *Id.* The acquisition began on March 21, 1988, when American Stores initiated a hostile takeover bid for all of Lucky's outstanding shares. Pursuant to the Hart–Scott–Rodino Antitrust Improve-

Frank Rothman, Skadden, Arps, Slate, Meagher & Flom, Los Angeles, Cal., for defendants-appellants.

H. Chester Horn, Jr., Deputy Atty. Gen., Los Angeles, Cal., for plaintiff-appellee.

ments Act, 15 U.S.C. § 18a, American Stores notified the Federal Trade Commission (FTC) of its intentions. On May 23, 1988, American Stores increased its tender offer and Lucky's board approved the merger.

On May 31, 1988, the FTC suspended the merger by filing an administrative complaint charging that American Stores's acquisition of Lucky would violate section 7 of the Clayton Act and section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45. The FTC simultaneously filed a proposed consent order settling its charges on the condition that American Stores comply with certain demands. For example, the consent order required American Stores to divest itself of 24 of its 54 Alpha Beta supermarkets in Northern California. The consent order also contained an Agreement to Hold Separate (Hold Separate), whereby American Stores would be required to operate Lucky separately and to refrain from integrating the two companies' assets. The Hold Separate was to continue until American Stores satisfied all of the consent order's conditions.

American Stores agreed to the consent order, proceeded with the merger under its conditions, and by June 9, 1988, had acquired 100% of Lucky's outstanding stock. American Stores paid an aggregate price in excess of $2.5 billion. On September 1, 1988, California initiated this action, requesting as relief a Hold Separate similar to that of the FTC, rescission, divestiture, injunctive and declaratory relief, and "such other and further relief as the case requires."

## II

■ Our review of an order granting a preliminary injunction is limited. *Caribbean Marine Services Co. v. Baldrige,* 844 F.2d 668, 673 (9th Cir.1988) (*Caribbean Marine*); *Oakland Tribune, Inc. v. Chronicle Publishing Co.,* 762 F.2d 1374, 1376 (9th Cir.1985) (*Oakland Tribune*); *Sports Form, Inc. v. United Press International,* 686 F.2d 750, 752 (9th Cir.1982) (*Sports Form*). "The grant or denial of a motion for a preliminary injunction lies

within the discretion of the district court." *Zepeda v. United States Immigration and Naturalization Service,* 753 F.2d 719, 724 (9th Cir.1983) (*Zepeda*); *United States v. Odessa Union Warehouse Co-op,* 833 F.2d 172, 174 (9th Cir.1987) (*Odessa Union*); *Sports Form,* 686 F.2d at 752.

When reviewing an order issuing a preliminary injunction, an appellate court must determine whether the district court applied the proper legal standard in issuing the injunction and whether it abused its discretion in applying that standard. An injunction may also be set aside if the district court misapprehended the law on its preliminary assessment of the merits, or premised its conclusions on clearly erroneous findings of fact. Absent one of these errors, the district court's decision will not be reversed merely because the appellate court would have arrived at a different result if it had initially applied the law to the facts of the case.

*Caribbean Marine,* 844 F.2d at 673 (citations omitted).

## III

■ We now consider whether the district court abused its discretion in granting California's motion for a preliminary injunction. To obtain a preliminary injunction, California "must show either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips sharply in its favor." *Odessa Union,* 833 F.2d at 174 (citation omitted); *Oakland Tribune,* 762 F.2d at 1376; *Sports Form,* 686 F.2d at 753. These formulations are not different tests but represent two points on a continuum in which the degree of irreparable harm that must be shown increases as the probability of success on the merits decreases. *Odessa Union,* 833 F.2d at 174; *Arcamuzi v. Continental Air Lines, Inc.,* 819 F.2d 935, 937 (9th Cir. 1987); *Oakland Tribune,* 762 F.2d at 1376. The district court's order granting the preliminary injunction is reversible if the court

did not employ these legal standards. *Zepeda*, 753 F.2d at 724.

■ The district court found that California had shown a likelihood of success on the merits of its Clayton Act claim. To establish a prima facie violation of section 7 of the Clayton Act, California must prove that the effect of American Stores's acquisition of Lucky's stock "may be substantially to lessen competition." 15 U.S.C. § 18. A merger may substantially lessen competition by permitting one firm to control an undue share of the relevant market and by significantly increasing the concentration of firms in that market. *United States v. Philadelphia National Bank*, 374 U.S. 321, 363, 83 S.Ct. 1715, 1741, 10 L.Ed.2d 915 (1963) (*Philadelphia National Bank*).

### A.

American Stores argues that the district court improperly defined the relevant product market and thus erred in finding that the merger may substantially lessen competition. "The outer boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it." *Brown Shoe Co. v. United States*, 370 U.S. 294, 325, 82 S.Ct. 1502, 1523–24, 8 L.Ed.2d 510 (1962) (*Brown Shoe*) (footnote omitted). Where an increase in the price of one product leads to an increase in demand for another, both products should be included in the relevant product market. *E.g., United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 400, 76 S.Ct. 994, 1009–10, 100 L.Ed. 1264 (1956).

■ American Stores, though itself a supermarket chain, asserts that the relevant product market should not be limited to supermarkets. Rather, the market should include all retailers of grocery products, such as convenience stores, "mom and pop" grocery stores, gasoline stations, delis, bakeries, and limited assortment warehouse hyper-stores. Consumers, according to American Stores, readily engage in demand substitution between different types of grocery retailers.

The district court accepted California's view that the relevant product market was limited to supermarkets—full-line grocery stores with more than 10,000 square feet. *American Stores*, 697 F.Supp. at 1129. The district court reasoned that only such supermarkets compete for consumers' periodic grocery shopping needs. *Id.* California presented expert testimony supporting this definition and offered American Stores's own internal marketing documents indicating that American Stores considers other supermarkets to be its only competitors.

Were we to evaluate independently the evidence of the relevant product market, we might reach a different conclusion. But that ultimate determination must await our review of any subsequent permanent injunction. "Because our review of the law applied by the district court is so limited and because the fully developed factual record may be materially different from that initially before the district court, our disposition of appeals from most preliminary injunctions provides little guidance on the appropriate resolution of the merits." *Zepeda*, 753 F.2d at 724. Indeed, after all evidence is presented at trial, the fact finder may come to a different view of the market. But for now, we are restricted to our limited review. The record shows that the district court, in making its preliminary assessment of the merits, understood the law. American Stores merely disagrees with its application. The facts upon which the district court relied were not clearly erroneous. They were supported by expert testimony. Confronted with two competing theories of the market, both supported by evidence, the district court exercised its judgment concerning the cross-elasticity of demand. At this stage, we do not resolve conflicts in the evidence. *FTC v. Warner Communications Inc.*, 742 F.2d 1156, 1164 (9th Cir.1984) (*Warner Communications*). We therefore conclude that the district court did not abuse its discretion in limiting the product market to the described supermarkets.

### B.

■ American Stores argues that the district court erred in its analysis of the

merger's effects on competition. Relevant indicia of competitive effects are (1) the market shares of the merging firms, (2) the degree of concentration in the market, and (3) the degree to which that concentration is increased by the merger. *See United States v. Von's Grocery Co.*, 384 U.S. 270, 277–78, 86 S.Ct. 1478, 1482, 16 L.Ed.2d 555 (1966); *Philadelphia National Bank*, 374 U.S. at 363–65, 83 S.Ct. at 1741–43; *Brown Shoe*, 370 U.S. at 322 n. 38, 82 S.Ct. at 1522 n. 38. Statistics that indicate excessive post-merger market share and market concentration create a presumption that the merger violates the Clayton Act. *Philadelphia National Bank*, 374 U.S. at 363, 83 S.Ct. at 1741.

■ Both American Stores and California submitted considerable statistical evidence of pre- and post-merger market share and market concentration. *American Stores*, 697 F.Supp. at 1130. The district court, using the geographic market defined by American Stores, found American Stores's average post-merger market share to be 24%, with a range from 15% to 38% in individual areas. Two-firm concentration would increase from a pre-merger average of 51% to a post-merger average of 56% and four-firm concentration would increase from an average of 73% to 79%. *Id.* The district court also used an additional statistical method, the Herfindahl–Herschman Index (HHI), to evaluate the effects of the merger. *Id.* The court found that the HHI indicated a highly concentrated post-merger market. *Id.* Finally, the court considered statistical data of historical market share trends. American Stores offered data which it contended reflected a decrease in market concentration. California offered more extensive evidence showing an increase in concentration. *Id.* at 1131.

The district court found that the statistical evidence of market share, market concentration, and market concentration trends created a presumption that American Stores's acquisition of Lucky would lessen competition substantially. *Id.* We cannot conclude that the statistics upon which the district court relied were clearly erroneous. All of the statistics were supported by expert testimony. Likewise, the district court did not misapprehend the law in its preliminary assessment of the merits. The district court understood the legal definition of a highly concentrated market and the types of evidence that are probative of market concentration. The district court's evaluation of the statistical evidence required an exercise of judgment. We therefore hold that the district court did not abuse its discretion in finding that California had established a prima facie violation of section 7 of the Clayton Act.

American Stores can rebut the district court's determination of a prima facie violation of section 7 through evidence demonstrating that statistics on market share, market concentration, and market concentration trends portray inaccurately the merger's probable effects on competition. *See United States v. Citizens & Southern National Bank*, 422 U.S. 86, 120, 95 S.Ct. 2099, 2118, 45 L.Ed.2d 41 (1975); *United States v. General Dynamics Corp.*, 415 U.S. 486, 496–504, 94 S.Ct. 1186, 1193–97, 39 L.Ed.2d 530 (1974). The burden to rebut the presumption of illegality is on American Stores. *United States v. Marine Bancorporation, Inc.*, 418 U.S. 602, 631, 94 S.Ct. 2856, 2874, 41 L.Ed.2d 978 (1974).

■ An absence of entry barriers into a market constrains anticompetitive conduct, irrespective of the market's degree of concentration. *See United States v. Falstaff Brewing Corp.*, 410 U.S. 526, 532–33, 93 S.Ct. 1096, 1100–01, 35 L.Ed.2d 475 (1973) (finding that the potential for Falstaff brewer to enter the market might constrain brewers in Northeast to maintain competitive prices). American Stores argues that it rebutted the presumption of illegality by demonstrating an absence of meaningful entry barriers into the retail grocery market. The district court found that American Stores had not satisfied its burden. *American Stores*, 697 F.Supp. at 1133. Although American Stores makes a compelling case for easy entry into the market, we can reverse the district court only if its finding was clearly erroneous.

■ To show an absence of entry barriers, American Stores offered evidence of two recent entrants into the retail grocery market. The first, Market Wholesale Grocery Co., had plans to purchase 15 stores that Alpha Beta and Lucky were required to divest pursuant to the FTC's consent order. *Id.* at 1132. The district court found that this entry, based on the events that triggered it, was not probative of an absence of barriers. *Id.* The second recent entrant, Richard London, testified that he had opened four "Major Market" stores in the past two years. *Id.* The district court found that London's stores were not part of the relevant product market. *Id.* American Stores also offered the declarations of William Christy and Donald Kaplan, both industry participants, who testified that entry into the retail grocery market is not difficult. California provided expert testimony to the effect that entry barriers do exist in the grocery market. California's expert identified these barriers as: (1) store economies of scale; (2) multistore economies of scale, such as advertising costs; (3) capital costs and risk; (4) the difficulty of obtaining desirable store sites; and (5) strategic behavior by incumbent chains such as zone pricing and geographic preemption.

The district court, in evaluating the absence of entry barriers, considered the following factors: (1) amount of capital necessary to become a competitor in the market; (2) availability of capital; (3) availability of technological advancements; (4) number and size of customers or firms already operating in the market; and (5) structure and nature of the industry. *Id.* We have recognized that consideration of these factors is appropriate. *See Warner Communications,* 742 F.2d at 1163–64. Thus, the district court did not misapprehend the law. We do not find as a matter of law that entry into the market for retail supermarkets is difficult. Rather, we recognize that both parties offered competing evidence. We must therefore conclude that the district court's holding that American Stores did not satisfy its burden of rebutting California's prima facie showing of a

violation of section 7 was not an abuse of discretion.

## C.

■ Finally, American Stores argues that the district court's conclusion of California's likelihood of success on the merits was in error because the FTC's consent order resolved all antitrust concerns. At a minimum, American Stores contends, the FTC's findings should be afforded considerable deference. For this proposition, American Stores relies on *Lieberman v. FTC,* 771 F.2d 32 (2d Cir.1985) (*Lieberman*), and *Mattox v. FTC,* 752 F.2d 116 (5th Cir.1985) (*Mattox*).

Neither *Lieberman* nor *Mattox* discussed the appropriate degree of deference that a federal court should afford an FTC consent order when the FTC is not a party to the action. Rather, these cases addressed a narrow issue of statutory interpretation, namely, whether section 7A(h) of the Clayton Act prohibits the FTC from providing to state attorneys general premerger information filed pursuant to the Hart–Scott–Rodino Act. *Lieberman,* 771 F.2d at 33; *Mattox,* 752 F.2d at 117. Thus, *Lieberman* and *Mattox* provide no support for American Stores's argument.

More analogous is *United States v. Borden Co.,* 347 U.S. 514, 74 S.Ct. 703, 98 L.Ed. 903 (1954), where the Supreme Court examined the legal effect of a consent decree on a subsequent antitrust action brought by the United States. Holding that the prior consent decree did not bar the action, the Court explained that "private and public [Clayton Act] actions were designed to be cumulative, not mutually exclusive." *Id.* at 518, 74 S.Ct. at 706. The Court reasoned that private and public interests in antitrust actions may not necessarily coincide. *Id.* at 518–20, 74 S.Ct. at 706–07. We think this reasoning applies here. California may have different interests than does the FTC in protecting its citizens from antitrust violations. *See Arvin Industries, Inc. v. Maremont Corp.,* 1973 Trade Cas. (CCH) ¶ 74,416, 1973 WL 784 (S.D.Ind.1973). We do not hold that federal courts should give no deference to

FTC consent orders. Rather, we hold that in this case the district court did not abuse its discretion in finding a likelihood of success on the merits.

## IV

As we pointed out above, California may obtain a preliminary injunction by showing both a likelihood of success on the merits and the possibility of irreparable harm. *Odessa Union*, 833 F.2d at 174; *Oakland Tribune*, 762 F.2d at 1376; *Sports Form*, 686 F.2d at 753. The district court decided that the irreparable harm that would result absent an injunction is the lessening of competition. *American Stores*, 697 F.Supp. at 1134. We agree with the district court that this is precisely the kind of irreparable injury that injunctive relief under section 16 of the Clayton Act was intended to prevent. *See* 15 U.S. C. § 26; *United States v. BNS, Inc.*, 858 F.2d 456, 466 (9th Cir.1988) (*BNS*). Indeed, the district court's determination of irreparable harm follows naturally from its holding of likelihood of success on the merits. We hold that the district court did not abuse its discretion in granting California's motion for a preliminary injunction. Because California's showing of likelihood of success on the merits and possibility of irreparable harm satisfies the prerequisites for granting a preliminary injunction, we need not address American Stores's arguments concerning the balance of hardships.

## V

Section 16 of the Clayton Act allows any party to sue for injunctive relief against threatened loss or damage resulting from a violation of the antitrust laws. 15 U.S.C. § 26. American Stores contends that the relief that the district court ordered in its preliminary injunction is not available to California under section 16 of the Clayton Act. The district court's order required the following of American Stores:

1. Take all steps necessary to operate American Stores Company, Alpha Beta Acquisition Corporation and their subsidiaries, divisions and groups (collectively "American Stores"), independently of the assets and businesses of Lucky Stores, Inc. ("Lucky") in the State of California.

2. Refrain from taking any action to modify the status quo as to the California operations of Alpha Beta or Lucky as of September 6, 1988, other than in the ordinary course of business, and shall refrain from taking any further steps to merge or integrate the assets and businesses of American Stores' Alpha Beta California operations with those of Lucky's California operations or any further steps to merge or integrate the assets and businesses of Lucky's California operations with those of American Stores' Alpha Beta California operations.

*American Stores*, 697 F.Supp. at 1136. American Stores argues that this order requires divestiture, rescission, or dissolution —forms of relief not available in a permanent injunction to private parties under section 16. According to American Stores, because a preliminary injunction is designed solely to preserve the ability to award permanent relief, the district court abused its discretion by ordering in a preliminary injunction relief that it cannot award in a permanent injunction.

In *International Telephone & Telegraph Corp. v. General Telephone & Electronics Corp.*, 518 F.2d 913, 920 (9th Cir.1975) (*IT & T*), we held "that divestiture is not an available remedy in private actions under § 16 of the Clayton Act." *See also Bosse v. Crowell Collier & MacMillan*, 565 F.2d 602, 607 (9th Cir.1977) (*Bosse*) ("divestiture is not an available remedy in private actions [under section 16]"); *Calnetics Corp. v. Volkswagen of America, Inc.*, 532 F.2d 674, 692 (9th Cir.) (*Calnetics*) ("remedy of divestiture is not available to private plaintiffs in antitrust suits"), *cert. denied*, 429 U.S. 940, 97 S.Ct. 355, 50 L.Ed.2d 309 (1976). We also held in *IT & T* that section 16 does not permit indirect divestiture, that is, an injunction which on its face does not order divestiture but which has the same effect. *IT & T*, 518 F.2d at 924. For example, we observed

that an injunction barring a corporation from voting the stock of, or exercising any control over its subsidiaries, or from obtaining representation on the board of directors of an acquired company, is in effect a directed divestiture. Such an injunction, therefore, could not be ordered under section 16. *Id.*

■ The district court's injunction on its face did not order divestiture. Rather, similar to the FTC's consent order, it required a Hold Separate preventing the integration of two wholly-owned subsidiaries of a common parent. American Stores insists that the district court's Hold Separate is divestiture by another name. California, on the other hand, asserts that the district court's order merely maintained the status quo. On the date the district court entered the preliminary injunction, American Stores, pursuant to the FTC's consent order, was operating its Alpha Beta and Lucky subsidiaries separately. Thus, California argues, the injunction did not order the type of retrospective relief that *IT & T* held to be unavailable under the Clayton Act.

The district court reasoned that the Hold Separate could be granted because Lucky and Alpha Beta's operations had yet to be integrated completely due to the existence of the FTC's consent order. The district court apparently believed that the merger had not been consummated. Thus, the preliminary injunction, in the district court's view, did not order divestiture or dissolution. *American Stores,* 697 F.Supp. at 1133–34.

We conclude that the district court misapprehended the law of divestiture. Our decisions in *IT & T, Bosse,* and *Calnetics* are clear that divestiture, whether direct or indirect, is not an available form of relief under section 16 for a private party such as California. The preliminary injunction in this case prevents American Stores from exercising an important form of control over its wholly-owned subsidiaries: it requires Lucky and Alpha Beta, though both owned by American Stores, to act as competitors. In other words, these stores must operate as if Lucky had never been

acquired by American Stores at all. Such an injunction requires indirect divestiture. *See IT & T,* 518 F.2d at 924.

The district court also misapprehended the law governing corporate mergers in concluding that the merger had not been completed. Prior to the issuance of the injunction, American Stores had acquired all of the outstanding stock of Lucky. Under Delaware law, applicable here because all parties to the merger were Delaware corporations, the merger had already taken place. *See* Del.Code Ann. tit. 8 §§ 251–263 (1983 & Supp.1988). The FTC's consent order did not undo the legal effect of this merger; it merely forestalled the complete integration of Lucky and Alpha Beta. The district court thus misunderstood the legal status of the merger, and this error compounded its misapprehension of the law of divestiture.

■ The purpose of the consent order was to preserve the FTC's ability to seek divestiture if American Stores did not comply with its conditions. But California, unlike the FTC, cannot obtain divestiture relief. Under these circumstances, we do not believe that California, which is otherwise not entitled to divestiture, should be able to bootstrap itself into this remedy, even temporarily, by virtue of a consent order designed to protect the rights of the FTC, which is entitled to sue for divestiture. Preliminary injunctive relief should be narrowly tailored, and should be no more burdensome than necessary to preserve a plaintiff's ability to obtain the complete permanent relief to which it is entitled. *See Zepeda,* 753 F.2d at 728 n. 1. There must be some reasonable relationship between the preliminary injunction and the permanent relief requested: the preliminary relief granted should ensure the availability of permissible permanent relief sought. That relationship is missing from the preliminary injunction granted here, particularly in light of the district court's misapprehension of the law of divestiture and merger. In these circumstances, we conclude that the preliminary injunction was overly broad. *See BNS,* 858 F.2d at 465–66 (overly broad preliminary injunction

an abuse of discretion). We therefore hold that to the extent that the district court ordered American Stores to operate its subsidiaries separately, the district court abused its discretion. *See id.; See also Zepeda,* 753 F.2d at 724 (preliminary injunction may be reversed because court applies "acceptable preliminary injunction standard in a manner that results in an abuse of discretion").

Our holding does not foreclose California's ability to obtain injunctive relief. To the contrary, relief "directed at the symptoms rather than the underlying cause" remains available. *IT & T,* 518 F.2d at 925. On remand, the district court is free to consider granting such relief.

We do not believe that our holding puts California in an untenable position in future cases. California could have sued several months earlier and attempted to enjoin the merger before the stock sale was completed. The Attorney General chose not to do so. California must accept the consequences of his choice.

### VI

■ American Stores appeals the district court's order denying its motion to dismiss for failure to state a claim upon which relief can be granted. American Stores submitted voluminous materials outside the pleadings which the district court considered. Rule 12(b)(6) of the Federal Rules of Civil Procedure provides: "If ... matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment...." *See, e.g., Grove v. Mead School District No. 354,* 753 F.2d 1528, 1532–33 (9th Cir.), *cert. denied,* 474 U.S. 826, 106 S.Ct. 85, 88 L.Ed.2d 70 (1985); *Garaux v. Pulley,* 739 F.2d 437, 439–40 (9th Cir.1984). Thus, we review American Stores's motion as one for summary judgment. Because no final judgment has been entered in this case, and the denial of a motion for summary judgment is not a final order, we lack jurisdiction to entertain American Stores's motion. *Liberty Mutual Insurance Co. v. Wetzel,* 424 U.S. 737,

744, 96 S.Ct. 1202, 1206, 47 L.Ed.2d 435 (1976).

Each side should bear its own costs.

AFFIRMED IN PART, REVERSED AND REMANDED IN PART.