# CALIFORNIA *v.* AMERICAN STORES COMPANY ET AL.

No. A–151.   Decided August 22, 1989

JUSTICE O'CONNOR, Circuit Justice.

Applicant, the State of California, requests a stay of the mandate of the judgment of the United States Court of Appeals for the Ninth Circuit, pending disposition of its petition for a writ of certiorari.

Applicant, through its attorney general on behalf of himself and as *parens patriae*, brought the underlying action as a private plaintiff to enjoin the merger of respondent Lucky Stores, Inc., the largest retail grocery chain in California, and respondent American Stores Company, operator of Alpha Beta, the fourth largest retail grocery chain in California.* Applicant contends that the merger would substantially lessen competition in the relevant markets, in violation of § 7 of the Clayton Act, 38 Stat. 731, as amended, 15 U. S. C. § 18, § 1 of the Sherman Act, 26 Stat. 209, as amended, 15 U. S. C. § 1, and California's Cartwright Anti-

---

*American Stores initiated a hostile takeover bid for the Lucky chain on March 21, 1988. Pursuant to the Hart-Scott-Rodino Antitrust Improvements Act of 1976, 90 Stat. 1390, 15 U. S. C. § 18a, American Stores notified the Federal Trade Commission (FTC) of its intentions. On May 23, American Stores increased its tender offer, and Lucky's board of directors approved the merger. On May 31, the FTC filed an administrative complaint alleging violations of § 7 of the Clayton Act, 38 Stat. 731, as amended, 15 U. S. C. § 18, and § 5 of the Federal Trade Commission Act, 38 Stat. 719, as amended, 15 U. S. C. § 45. The FTC simultaneously proposed a consent order under which it would settle its antitrust complaint in exchange for American Stores' compliance with certain demands, including divestiture of certain supermarkets in northern California and an agreement to "hold separate" the two firms until American Stores satisfied all of the consent order's conditions. American Stores agreed to the consent order, and by June 9 completed its $2.5 billion acquisition of the outstanding Lucky stock. On August 31, the FTC gave final approval to the proposed consent order without modification. On September 1, applicant initiated the underlying action.

trust and Unfair Competition Acts, Cal. Bus. & Prof. Code Ann. §§ 16700–16761 and 17200–17208 (West 1987 and Supp. 1989).

The District Court granted applicant's motion for a preliminary injunction and ordered respondents to operate the two companies independently and refrain from merging or integrating their assets and businesses during the pendency of the action. 697 F. Supp. 1125 (CD Cal. 1988). The court concluded:

> "The overwhelming statistical evidence has demonstrated a strong probability that the proposed merger will substantially lessen competition in violation of Section 7 of the Clayton Act. This showing has not been rebutted by clear evidence that the proposed merger will not, in fact, substantially lessen competition. . . . [U]nless defendants are enjoined, the citizens of California will be substantially and irreparably harmed. While the Court in no way belittles the harm defendants may suffer as a result of this preliminary injunction, the Court concludes that it is substantially less than the harm plaintiff would suffer if the merger is not enjoined." *Id.*, at 1135.

The Court of Appeals for the Ninth Circuit affirmed in part and reversed and remanded in part. 872 F. 2d 837 (1989). The Court of Appeals affirmed the District Court's finding that applicant had shown a likelihood of success on the merits and the possibility of irreparable harm. *Id.*, at 844. The Court of Appeals found, however, that the remedy ordered by the District Court amounted to indirect divestiture, which, the Court of Appeals held, was not a remedy available to private plaintiffs under § 16 of the Clayton Act, 38 Stat. 737, as amended, 15 U. S. C. § 26. 872 F. 2d, at 844–846. Accordingly, the Court of Appeals remanded the case, concluding that the District Court's order enjoining respondents from integrating their operations was overly broad and thus an abuse of discretion. *Id.*, at 845–846.

The Court of Appeals denied applicant's petition for rehearing and rehearing en banc, but granted a stay of its mandate for 30 days to enable applicant to file a petition for a writ of certiorari with this Court. The Court of Appeals also partially remanded the case to the District Court to determine whether, pursuant to Federal Rule of Appellate Procedure 41(b), a bond or other security or condition should be required of applicant as a condition of the stay. The District Court ordered applicant to post an initial bond of $16,288,898 to protect respondents against potential financial losses as a result of the stay of mandate. Applicant, claiming budgetary and administrative impossibility, declined to post the bond and appealed the bond order. The Court of Appeals consequently vacated its stay and ordered issuance of the mandate.

In its application for a stay of the mandate pending this Court's disposition of its petition for certiorari, applicant contends that the Court of Appeals' bond requirement amounts to a denial of a stay and will result in irreparable harm to the State's consumers because of the merger's anticompetitive effects. Applicant also maintains that there is both a reasonable probability that its petition for a writ of certiorari will be granted, because the case presents an issue of great importance on which there is a conflict among the Circuits, and a fair prospect that applicant will prevail on the merits. Finally, applicant asserts that the equities justify a stay of the Court of Appeals' mandate.

I am persuaded that applicant has set forth sufficient reasons for granting a stay in this case. I agree with both the District Court and the Court of Appeals that applicant has made an adequate showing of irreparable injury. See 872 F. 2d, at 844 (lessening of competition "is precisely the kind of irreparable injury that injunctive relief under section 16 of the Clayton Act was intended to prevent") (citations omitted); 697 F. Supp., at 1134. Even if applicant is free to seek

other appropriate injunctive relief on remand, the possibility of irreparable injury, it seems to me, remains to the extent that such other relief would be inadequate to remedy the injury. Cf. 2 P. Areeda & D. Turner, Antitrust Law § 328b, p. 137 (1978) ("[D]ivestiture is the normal and usual remedy against an unlawful merger, whether sued by the government or by a private plaintiff").

Moreover, the issue presented appears to be an important question of federal law over which the Circuits are in conflict. Section 16 of the Clayton Act provides in relevant part that "[a]ny person . . . shall be entitled to sue for and have injunctive relief . . . against threatened loss or damage by a violation of the antitrust laws . . . when and under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity." 15 U. S. C. § 26. The Court of Appeals, relying on Circuit precedent, held that divestiture, whether direct or indirect, did not constitute "injunctive relief" within the meaning of § 16. See 872 F. 2d, at 844–846 (citing *International Telephone & Telegraph Corp.* v. *General Telephone & Electronics Corp.*, 518 F. 2d 913, 920 (CA9 1975)); accord, *Arthur S. Langenderfer, Inc.* v. *S. E. Johnson Co.*, 729 F. 2d 1050, 1060 (CA6), cert. denied, 469 U. S. 1036 (1984). As applicant notes, however, the Court of Appeals for the First Circuit has ruled that divestiture is a remedy available to private plaintiffs under § 16 in appropriate circumstances. *Compania Petrolera Caribe, Inc.* v. *Arco Caribbean, Inc.*, 754 F. 2d 404, 413–430 (1985); see also *NBO Industries Treadway Cos.* v. *Brunswick Corp.*, 523 F. 2d 262, 278–279 (CA3 1975) (dictum), vacated on other grounds, 429 U. S. 477 (1977). A number of District Courts have also reached the same conclusion. See, *e. g.*, *Tasty Baking Co.* v. *Ralston Purina, Inc.*, 653 F. Supp. 1250, 1255–1256 (ED Pa. 1987); *Julius Nasso Concrete Corp.* v. *Dic Concrete Corp.*, 467 F. Supp. 1016, 1024–1025 (SDNY 1979); *Credit Bureau Reports,*

*Inc.* v. *Retail Credit Co.*, 358 F. Supp. 780, 797 (SD Tex. 1971), aff'd, 476 F. 2d 989 (CA5 1973); *Bay Guardian Co.* v. *Chronicle Publishing Co.*, 340 F. Supp. 76, 81–82 (ND Cal. 1972). Given the conflict among the lower courts on this important and recurring issue and the need for uniform enforcement of federal antitrust laws, I think it fair to say that there is a reasonable probability that the petition for a writ of certiorari will be granted in this case.

Indeed, the weight of academic commentary favors a reading of § 16 that would permit divestiture as a remedy in private actions. See, *e. g.*, 2 P. Areeda & D. Turner, Antitrust Law § 328b, p. 137 (1978) ("[D]ivestiture is available in a private suit challenging unlawful mergers"); P. Areeda & H. Hovenkamp, Antitrust Law § 328b, pp. 290–291 (Supp. 1988) (approving *Petrolera, supra*); E. Kintner, Primer on the Law of Mergers 361–364 (1973) (divestiture is available in private actions under § 16); L. Sullivan, Law of Antitrust § 216, p. 672, n. 3 (1977) (same); Kintner & Wilberding, Enforcement of the Merger Laws by Private Party Litigation, 47 Ind. L. J. 293 (1972); Peacock, Private Divestiture Suits Under Section 16 of the Clayton Act, 48 Texas L. Rev. 54 (1969); Comment, Private Divestiture: Antitrust's Latest Problem Child, 41 Ford. L. Rev. 569 (1973); Note, The Use of Divestiture in Private Antitrust Suits, 43 Geo. Wash. L. Rev. 261 (1974); Note, Availability of Divestiture in Private Litigation as a Remedy for Violation of Section 7 of the Clayton Act, 49 Minn. L. Rev. 267 (1965); Comment, Section 16 of the Clayton Act: Divestiture an Intended Type of Injunctive Relief, 19 Pac. L. J. 143 (1987). Although I cannot, of course, predict with mathematical certainty my colleagues' views on the subject, see *New Motor Vehicle Board* v. *Orrin W. Fox Co.*, 434 U. S. 1345, 1347 (1977) (REHNQUIST, J., in chambers), this commentary suggests to me that plausible arguments exist for reversing the decision below and that there is at least a fair prospect that a majority of the Court may vote to do so. Cf. *Zenith Radio Corp.* v. *Hazeltine Re-*

*search, Inc.*, 395 U. S. 100, 130–131 (1969) ("Section 16 should be construed and applied . . . with the knowledge that the remedy it affords, like other equitable remedies, is flexible and capable of nice 'adjustment and reconciliation between the public interest and private needs as well as between competing private claims.' . . . Its availability should be 'conditioned by the necessities of the public interest which Congress has sought to protect'") (citation omitted).

Finally, balancing the stay equities persuades me that the harm to applicant if the stay is denied, in the form of a substantial lessening of competition in the relevant market, outweighs the harm respondents may suffer as a result of a stay of the mandate. Applicant alleges, for example, that permitting the merger would cost the State's consumers $400 million a year in higher prices. Respondents contend that they are incurring costs of over $1 million a week by reason of the District Court's injunction and applicant's decision to file suit after the merger had been consummated. To be sure, the cost of enjoining a merger before consummation is staggering, see *Western Airlines, Inc.* v. *Teamsters*, 480 U. S. 1301, 1309 (1987) (O'CONNOR, J., in chambers), and the cost of enjoining an already completed transaction even greater. But, as the District Court found, "the State conducted [its] investigation as swiftly as was responsibly possible." 697 F. Supp., at 1135. Under the circumstances, and in light of the public interests involved, it appears that the equities favor applicant.

Because the citizens of California will likely suffer irreparable harm if integration of respondents' companies is not enjoined, and because there is both a reasonable probability that at least four Justices will vote to grant the petition for a writ of certiorari and a fair prospect that applicant may prevail on the merits, I grant the requested stay of the mandate of the United States Court of Appeals for the Ninth Circuit in this case, pending the disposition by this Court of the petition for a writ of certiorari or further order of this Court.

This order is conditioned upon the posting of a good and sufficient bond with the Clerk of the United States District Court for the Central District of California, the adequacy of such bond to be determined by that court.

STATEMENT SHOWING THE NUMBER OF CASES FILED, DISPOSED OF AND REMAINING ON DOCKETS AT CONCLUSION OF OCTOBER TERMS, 1986, 1987 AND 1988

| | ORIGINAL | | | PAID | | | IN FORMA PAUPERIS | | | TOTALS | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1986 | 1987 | 1988 | 1986 | 1987 | 1988 | 1986 | 1987 | 1988 | 1986 | 1987 | 1988 |
| Number of cases on dockets | 12 | 16 | 14 | 2,547 | 2,577 | 2,587 | 2,575 | 2,675 | 3,056 | 5,134 | 5,268 | 5,657 |
| Number disposed of during term | 1 | 5 | 2 | 2,105 | 2,131 | 2,203 | 2,254 | 2,251 | 2,625 | 4,360 | 4,387 | 4,830 |
| Number remaining on dockets | 11 | 11 | 12 | 442 | 446 | 384 | 321 | 424 | 431 | 774 | 881 | 827 |

| | TERMS | | |
|---|---|---|---|
| | 1986 | 1987 | 1988 |
| Cases argued during term | 175 | 167 | 170 |
| Number disposed of by full opinions | 164 | 151 | 156 |
| Number disposed of by per curiam opinions | 10 | 9 | 12 |
| Number set for reargument | 1 | 7 | 2 |
| Cases granted review this term | 167 | 180 | 147 |
| Cases reviewed and decided without oral argument | 113 | 95 | 108 |
| Total cases to be available for argument at outset of following term | 91 | 105 | 81 |

JULY 3, 1989