In The Matter of 203 NORTH LaSALLE STREET PARTNERSHIP, an Illinois limited partnership, EIN # 36–3287706, Debtor.

No. 95 C 7144.

United States District Court,
N.D. Illinois,
Eastern Division.

Dec. 19, 1995.

Thomas S. Kiriakos, Mayer, Brown & Platt, Chicago, IL, for Bank of America Illinois.

Marc Wilkow, Chicago, IL, for 203 North LaSalle Street Partnership.

*MEMORANDUM OPINION AND ORDER*

PLUNKETT, District Judge.

Bank of America Illinois ("BAI") is owed in excess of $92.0 million by 203 North La-Salle Street Partnership (the "Debtor"), which debt is secured by a non-recourse mortgage on the Debtor's sole asset, the upper fifteen floors of office space in a Chicago central business district office building (the "Property"). The value of the Property now is approximately $38.0 million less than the amount of the debt, apparently caused, at least in part, by a decrease in value in such business properties since the time of the BAI loan. BAI's debt matured on January 3, 1995, and, with the Property owners unable to refinance because of the reduced value, BAI commenced a foreclosure action. On March 13, 1995, the state court judge handling the foreclosure action announced that he would appoint a receiver for the Property the next day. That afternoon, the Debtor commenced its Chapter 11 case.

On December 6, 1995, the bankruptcy court entered an order (the "Confirmation Order") confirming the Debtor's Second Amended Plan of Reorganization dated September 11, 1995 (the "Plan"). Among other things, the Plan extends the maturity date of BAI's loan for ten years, contemplates that BAI will relend excess cash flow payments it receives pursuant to the Plan, and changes the interest rate. The Plan provides that the effective date is the day after confirmation. BAI opposed the Plan in the bankruptcy court, and, upon finding the Plan approved anyway, sought to stay the Confirmation Order pending appeal. After hearings on December 4–5, 1995, the bankruptcy court announced its intention to enter the Confirmation Order on December 6, 1995 and denied BAI's motion for stay pending appeal. BAI then brought the instant emergency motion for stay pending appeal. For the reasons set forth below, we deny BAI's motion.

### *Discussion*

■ Our review of the decision by the bankruptcy court will employ the abuse of discretion standard. *Chapman v. Citicorp Mortgage, Inc.*, No. 92 C 2862, 1992 WL 157499 (N.D.Ill. June 23, 1992). The bankruptcy judge held long and detailed hearings which resulted in a 42–page opinion largely devoted to either factual findings or judgment calls. Under an abuse of discretion standard, BAI has its work cut out for it. We will not disturb the decision unless no reasonable person could agree with it. *Edgewater Walk Apartments v. Mony Life Ins. Co.*, 162 B.R. 490, 496 (N.D.Ill.1993).

■ In determining whether to grant a stay, a court should consider the following four factors: (1) BAI's likelihood of success on the merits of the appeal; (2) irreparable injury to BAI if a stay is not granted; (3) substantial harm to the Debtor or other parties if the stay is granted; and (4) harm to the public interest if the stay is granted. *In re Mader*, 100 B.R. 989 (N.D.Ill.1989).

Our review of the Confirmation Order and the accompanying Memorandum Decision issued by the bankruptcy court and of the transcript of the December 4–5 hearings indicates that the court carefully considered

appropriate factors both in determining to confirm the reorganization plan and to deny BAI's request for a stay pending appeal. We discuss each factor in turn.

## I. *Likelihood of Success on the Merits of the Appeal*

 BAI has identified five issues that will form the basis of its appeal: (1) the Plan is not feasible; (2) the Plan does not provide fair and equitable treatment of BAI's claims; (3) the Plan unfairly discriminates against BAI's unsecured claims; (4) there is no "new value" corollary to the absolute priority rule; and (5) even if such a corollary exists, it has not been satisfied by the Plan. We note that all but the fourth of these issues involve findings of fact. "On review of the determination of the bankruptcy court, the district court cannot disturb or set aside findings of fact unless they are clearly erroneous." *In re Mader,* 100 B.R. at 990. BAI has not sufficiently demonstrated to us that the bankruptcy court's determinations on these issues are clearly erroneous. For example, BAI points out that the only new capital (some three or four million dollars) is coming from the old owners only because those owners wish to protect their favorable tax situation. Perhaps true—but hardly a reason to strike down a plan of reorganization. The bankruptcy court did force down new mortgage terms on BAI. It did so because it was of the belief that such action best protected all the creditors and gave the greatest chance for a solvent debtor in the future. While this action has adversely affected BAI to some extent, it has benefitted others including a major tenant and smaller creditors. While we might, writing on a clean slate, choose a different course—let the bank foreclose and give the same benefits to the others out of its own pocket—we cannot say that the confirmation of the plan was simply unreasonable.

As to the fourth issue, BAI argues that the viability of the "new value" exception to the absolute priority rule remains an open question in the Seventh Circuit. *See In the Matter of Woodbrook Assoc.,* 19 F.3d 312, 320 (7th Cir.1994). That fact, BAI suggests and cites *In re Mader* in support, is sufficient to give BAI the benefit of a likelihood to succeed on the merits. BAI misreads *In re Mader.* In that case, the court found that the legal issue in question was one "of first impression and, on balance, the likelihood of success on the merits does not appear to weigh too heavily in favor of, or against, any of the parties ..." *In re Mader,* 100 B.R. at 991. The court issued a stay because the other three factors weighed heavily in favor of the party seeking the stay. *Id.* Furthermore, the viability of the "new value" exception is not strictly an issue of first impression. It has been before the Seventh Circuit at least twice. *In the Matter of Woodbrook Assoc., supra; In re Snyder,* 967 F.2d 1126 (7th Cir.1992). Though the court found it unnecessary to decide the issue in the cases before it, thus reserving the question to another day, it noted the current trend to recognize a "new value" corollary to the absolute priority rule. Indeed, a more recent Ninth Circuit decision has upheld the "new value" corollary and stated that the failure of Congress to overrule the corollary explicitly in its 1994 amendments to the Bankruptcy Code involving single asset Chapter 11 cases indicates its continued viability. *In re Bonner Mall Partnership,* 2 F.3d 899, 913–15 (9th Cir.1993). BAI has therefore not demonstrated a sufficient likelihood to prevail on the merits to carry its burden in the first factor.

## II. *Irreparable Harm to BAI in the Absence of a Stay*

BAI argues first that it is harmed by having to accept a new note with a seven-year term (renewable at Debtor's option for an additional three years) at a lower interest rate, rather than being allowed to foreclose now. Over the period of time it would take an appeal to proceed, this will not result in sufficient harm to BAI to justify the extraordinary measure of entering a stay.

 BAI then argues that it will be required to continue a now unwanted relationship with the Debtor for another ten years and that the value of the Property may well decrease further. It fears that if the Plan is allowed to proceed, the "egg could not be unscrambled" in the event that its appeal

succeeds, and its appeal would therefore be moot. We agree that this is a legitimate concern, but it still does not reach the level of irreparable harm. It is well settled that an appeal being rendered moot does not itself constitute irreparable harm. *In re Public Serv. Co. of New Hampshire*, 116 B.R. 347, 349–50 (Bankr.D.N.H.1990). Furthermore, BAI's fear that the value of its collateral will decrease is speculative—it may increase or it may decrease. Indeed, under the Plan, BAI will receive, in addition to its lien on the Property, substantial cash flow from the Debtor's operations. Although BAI's arguments that it will suffer some harm is well taken, we cannot say that the harm feared is irreparable, nor can we say that the bankruptcy court was unreasonable in finding no irreparable harm to BAI.

### III. *Substantial Harm to the Debtor and Other Parties*

■ The Plan is based on a financing package involving an initial cash contribution of $3 million by the Debtor's partners, execution and delivery of $3,125,000 in Investor Notes by certain investors, and a $1,125,000 five-year letter of credit to support the Investor Notes. That financing package would be jeopardized by the issuance of a stay, because of the strong likelihood that one or more of the investors would withdraw in favor of superior opportunities. Furthermore, the motivation for the infusion of new capital by the debtor's partners is to defer income tax liability, an opportunity that would be lost in the event of the death of any of the approximately 100 investors during the pendency of an appeal and the consequent step up in basis. Finally, the unsecured noninsider trade creditors would not receive the full payment to which they are entitled under the Plan until after the stay is lifted.

We conclude that there would be substantial hardship to the Debtor and to other interested parties if a stay were to be issued. Furthermore, we find that the bankruptcy court properly considered the harm to all parties and reasonably concluded that such harm warranted its denial of BAI's motion for a stay.

### IV. *Harm to the Public*

This factor is largely a wash. BAI argues that there would be no harm to the public, because the Property would continue to be operated whether or not there is a stay. The debtor argues that a stay would prevent Cook County from receiving approximately $2.2 million in delinquent property taxes that is payable within thirty days after the Plan goes into effect.

We find that the bankruptcy court properly considered all of the arguments of the parties before denying BAI's motion for a stay pending appeal and reasonably concluded that a stay is not warranted. Even were our review to be more searching than under an abuse of discretion standard, we would also find, on balance, that a stay is not warranted.

■ BAI finally argues that the bankruptcy court abused its discretion in confirming the Plan because the Plan puts BAI at a disadvantage in relation to what its position would be if it were allowed to proceed with foreclosure while the Debtor's partners' principal motivation in seeking Chapter 11 protection was to gain a substantial income tax advantage that would not be available to them in the event of a foreclosure. We admit that we are somewhat troubled with this result as well. Nevertheless, as an insolvent entity, the debtor was entitled to seek protection under the Bankruptcy Code, whatever its primary motivation might have been. Chapter 11 bankruptcy is a collective remedy that seeks a balance between the interests of all parties in order, as much as possible, to maintain the viability of the debtor as a going concern while protecting the interests of all creditors and other interested parties. In so doing, no party is likely to be completely satisfied. We are not convinced that the Plan as confirmed by the bankruptcy court has not carefully taken all of these competing interests into account to arrive at a reasonable result. Nor has BAI indicated what a better result for all, rather than only for it, might be. As a result, although BAI has advanced some credible arguments, we do not find that a stay pending appeal is warranted. We also do not find that the bankruptcy court abused its discretion, either in

confirming the Plan or in denying BAI's motion for a stay.

### Conclusion

For the foregoing reasons, the motion by Bank of America Illinois for a stay of the bankruptcy court's Confirmation Order pending appeal is denied.