NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

————

No. 10A273

————

## PHILIP MORRIS USA INC. ET AL. *v.* GLORIA SCOTT ET AL.

ON APPLICATION FOR STAY

[September 24, 2010]

JUSTICE SCALIA, Circuit Justice.

Respondents brought this class action against several tobacco companies on behalf of all Louisiana smokers. The suit alleged that the companies defrauded the plaintiff class by "distort[ing] the entire body of public knowledge" about the addictive effects of nicotine. *Scott* v. *American Tobacco Co.*, 2004–2095, p. 14. (La. App. 2/7/07) 949 So. 2d 1266, 1277. The Fourth Circuit Court of Appeal of Louisiana granted relief on that theory, and entered a judgment requiring applicants to pay $241,540,488 (plus accumulated interest of about $29 million) to fund a 10-year smoking cessation program for the benefit of the members of the plaintiff class. *Scott* v. *American Tobacco Co.*, 2009–0461, p. 21–23 (5/5/10) 36 So. 3d 1046, 1059–1060. (Still to be determined are the allowable attorney's fees, which will likely be requested in the tens of millions of dollars.) The Supreme Court of Louisiana declined review. *Scott* v. *American Tobacco Co.,* 2010–1361 (9/3/10), ___ So. 3d ___. The applicants have asked me, in my capacity as Circuit Justice for the Fifth Circuit, to stay the judgment until this Court can act on their intended petition for a writ of certiorari.

A single Justice has authority to enter such a stay, 28 U. S. C. §2101(f), but the applicant bears a heavy burden. It is our settled practice to grant a stay only when three conditions are met: First, there must be a reasonable probability that certiorari will be granted (or probable jurisdiction noted). Second, there must be a significant possibility that the judgment below will be reversed. And third, assuming the applicant's position on the merits is correct, there must be a likelihood of irreparable harm if the judgment is not stayed. *Barnes* v. *E-Systems, Inc. Group Hospital Medical & Surgical Ins. Plan*, 501 U. S. 1301, 1302 (1991) (SCALIA, J., in chambers). I conclude that this standard is met.

Applicants complain of many violations of due process, including (among others) denial of the opportunity to cross-examine the named representatives of the class, factually unsupported estimations of the number of class members entitled to relief, and constant revision of the legal basis for the plaintiffs' claim during the course of litigation. Even though the judgment that is the alleged consequence of these claimed errors is massive—more than $250 million—I would not be inclined to believe that this Court would grant certiorari to consider these fact-bound contentions that may have no effect on other cases.

But one asserted error in particular (and perhaps some of the others as well) implicates constitutional constraints on the allowable alteration of normal process in class actions. This is a fraud case, and in Louisiana the tort of fraud normally requires proof that the plaintiff detrimentally relied on the defendant's misrepresentations. 949 So. 2d, at 1277. Accordingly, the Court of Appeal indicated that members of the plaintiff class who wish to seek individual damages, rather than just access to smoking-cessation measures, would have to establish their own reliance on the alleged distortions. *Ibid.* But the Court of Appeal held that this element need *not* be proved insofar

as the class seeks payment into a fund that will *benefit* individual plaintiffs, since the defendants are guilty of a "distort[ion of] the entire body of public knowledge" on which the "class as a whole" has relied. *Id.,* at 1277–1278. Thus, the court eliminated any need for plaintiffs to prove, and denied any opportunity for applicants to contest, that any particular plaintiff who benefits from the judgment (much less all of them) believed applicants' distortions and continued to smoke as a result.

Applicants allege that this violates their due-process right to "an opportunity to present every available defense." *Lindsey* v. *Normet*, 405 U. S. 56, 66 (1972) (internal quotation marks omitted) (quoting *American Surety Co.* v. *Baldwin*, 287 U. S. 156, 168 (1932)). Respondents concede that due process requires such an opportunity, but they contend that the intermediate state court's pronouncement means that, as a matter of Louisiana's substantive law, applicants *have* no nonreliance defense. That response may ultimately prove persuasive, but at this stage it serves to describe the issue rather than resolve it. The apparent consequence of the Court of Appeal's holding is that individual plaintiffs who could not recover had they sued separately *can* recover only because their claims were aggregated with others' through the procedural device of the class action.

The extent to which class treatment may constitutionally reduce the normal requirements of due process is an important question. National concern over abuse of the class-action device induced Congress to permit removal of most major class actions to federal court, see 28 U. S. C. §1332(d), where they will be subject to the significant limitations of the Federal Rules. Federal removal jurisdiction has not been accorded, however, over many class actions in which more than two-thirds of the plaintiff class are citizens of the forum State. See §1332(d)(4). Because the class here was drawn to include only residents of

Louisiana, this suit typifies the sort of major class action that often will not be removable, and in which the constraints of the Due Process Clause will be the only federal protection. There is no conflict between federal courts of appeals or between state supreme courts on the principal issue I have described; but the former seems impossible, since by definition only state class actions are at issue; and the latter seems implausible, unless one posits the unlikely case where the novel approach to class-action liability is a legislative rather than judicial creation, or the creation of a lower state court disapproved by the state supreme court on federal constitutional grounds. This constitutional issue ought not to be permanently beyond our review.

Given those considerations, I conclude applicants have satisfied the prerequisites for a stay. I think it reasonably probable that four Justices will vote to grant certiorari, and significantly possible that the judgment below will be reversed. As for irreparable harm: Normally the mere payment of money is not considered irreparable, see *Sampson* v. *Murray*, 415 U. S. 61, 90 (1974), but that is because money can usually be recovered from the person to whom it is paid. If expenditures cannot be recouped, the resulting loss may be irreparable. See, *e.g.*, *Mori* v. *Boilermakers*, 454 U. S. 1301, 1303 (1981) (Rehnquist, J., in chambers). Here it appears that, before this Court will be able to consider and resolve applicants' claims, a substantial portion of the fund established by their payment will be irrevocably expended. Funds spent to provide anti-smoking counseling and devices will not likely be recoverable; nor, it seems, will the $11,501,928 fee immediately payable toward administrative expenses in setting up the funded program.

That does not end the matter. A stay will not issue simply because the necessary conditions are satisfied. Rather, "sound equitable discretion will deny the stay

when 'a decided balance of convenience'" weighs against it. *Barnes, supra*, at 1304–1305 (SCALIA, J., in chambers) (quoting *Magnum Import Co.* v. *Coty*, 262 U. S. 159, 164 (1923)). Here, however, the equities favor granting the application. Refusing a stay may visit an irreversible harm on applicants, but granting it will apparently do no permanent injury to respondents. Applicants allege that similar smoking-cessation measures are freely and readily available from other sources in Louisiana, and respondents have not disputed that. Under those circumstances, the equitable balance favors issuance of the stay.

The application for a stay of the execution of the judgment of the Court of Appeal of Louisiana, Fourth Circuit, is granted pending applicants' timely filing, and this Court's disposition, of a petition for a writ of certiorari.

*It is so ordered.*