Nolan SALIX; Cottonwood
Environmental Law
Center, Plaintiffs,

v.

UNITED STATES FOREST SERVICE;
Faye Krueger, in her official capacity
as Regional Forester for the U.S. Forest Service, Region One, Defendants.

No. CV 12–45–M–DLC.

United States District Court,
D. Montana,
Missoula Division.

Feb. 6, 2014.

John Meyer, Andrew S. Gorder, Bozeman, MT, Plaintiffs.

John H. Martin, U.S. Department of Justice, Denver, CO, Mark Steger Smith, Office of the U.S. Attorney, Billings, MT, for Defendants.

## ORDER

CHRISTENSEN, Chief Judge.

Before the Court is Defendants' motion to stay the judgment in this case. For the reasons explained, the motion will be denied.

### FACTUAL AND PROCEDURAL BACKGROUND

On May 16, 2013, 944 F.Supp.2d 984 (D.Mont.2013), this Court granted sum-

mary judgment in favor of the Plaintiffs, finding that Defendants had violated the Endangered Species Act by failing to reinitiate section 7 consultation following the designation of critical habitat by the Fish and Wildlife Service for the threatened Canada lynx. Lynx critical habitat was designated in 11 national forests subject to the Lynx Amendment's programmatic directions regarding forest management activities relative to this threatened species. In awarding summary judgment for the Plaintiffs, the Court ordered Defendants to reinitiate consultation on the Lynx Amendment. The Court simultaneously denied Plaintiffs' motion for a blanket injunction on all projects in all forests that were subject to the Lynx Amendment.

Defendants filed their notice of appeal of the Court's decision on July 12, 2013. Defendants did not file the instant motion to stay the Court's May 16, 2013, Order until November 8, 2013, and the motion to stay was not fully briefed until December 23, 2013. Defendants' appeal is pending before the Ninth Circuit Court of Appeals, where it will be fully briefed no later than February 4, 2014.

### APPLICABLE LAW

■ Rule 62(c), Fed.R.Civ.P., authorizes a district judge, having granted an injunction, to stay its decision pending appeal. The issuance of a stay is "an exercise of judicial discretion" that is "dependent upon the circumstances of the particular case." *Nken v. Holder,* 556 U.S. 418, 433, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009) (quoting *Virginian R. Co. v. United States,* 272 U.S. 658, 672–673, 47 S.Ct. 222, 71 L.Ed. 463 (1926)). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of [the Court's] discretion." *Id.,* 556 U.S. at 433–434, 129 S.Ct. 1749.

■ The issuance of a stay is guided by consideration of four factors:

(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Id.* (quoting *Hilton v. Braunskill,* 481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987)). In balancing these factors, "[t]he first two factors ... are the most critical." *Id.*

It must be emphasized, however, that "even certainty of irreparable harm has never *entitled* one to a stay," *Leiva–Perez v. Holder,* 640 F.3d 962, 965 (9th Cir.2011) (emphasis in original), and a "general balancing approach" of all the factors remains as the primary guidepost. *Id.,* 640 F.3d at 966.

■ United States Supreme Court case law makes clear that certain minimum thresholds must be met for the issuance of a stay. For instance, a proper showing regarding irreparable harm is a "bedrock requirement" for the issuance of a stay. *Id.,* 640 F.3d at 965. "If the petitioner has not made a certain threshold showing regarding irreparable harm ... then a stay may not issue, regardless of the petitioner's proof regarding the other stay factors." *Id.* "[S]tays must be denied to all petitioners who [do] not meet the applicable irreparable harm threshold." *Id.*

With regard to the threshold showing of irreparable harm, the United States Supreme Court has rejected an approach whereby a stay can issue by "simply showing some *possibility* of irreparable injury." *Nken,* 556 U.S. at 434, 129 S.Ct. 1749 (quoting *Abbassi v. INS,* 143 F.3d 513, 514 (C.A.9 1998)). "[T]he possibility standard," the Supreme Court has said, "is too lenient." *Id.* (quoting *Winter v. Natural Resources Defense Council, Inc.,* 555 U.S.

7, 129 S.Ct. 365, 375, 172 L.Ed.2d 249 (2008)). Thus, a petitioner seeking a stay must show that "irreparable harm is probable if the stay is not granted." *Leiva–Perez v. Holder,* 640 F.3d at 968. Put another way, a petitioner "must show that an irreparable injury is the more probable or likely outcome." *Id.*

Moreover, the petitioner must show that the harm is truly "irreparable." For instance, in *Nken,* the Court rejected the notion that removal of an alien, without more, constituted an adequate showing of irreparable harm. 129 S.Ct. at 1761. The Court held that "[a]lthough removal is a serious burden for many aliens, it is not categorically irreparable." *Id.* In this regard, the Ninth Circuit has recognized that a Court "cannot base stay decisions on assumptions and 'blithe assertions.'" *Leiva–Perez v. Holder,* 640 F.3d at 970 (quoting *Nken,* 129 S.Ct. at 1762).

Once the petitioner shows that "irreparable harm is probable", the other factors are assessed on a sliding scale such that the petitioner must show "either: (a) a strong likelihood of success on the merits and that the public interest does not weigh heavily against a stay; or (b) a substantial case on the merits and that the balance of hardships tips sharply in the petitioner's favor." *Id.,* 640 F.3d at 970. "[A]t a minimum" a petitioner must show "a substantial case for relief on the merits." *Id.,* 640 F.3d at 968. Therefore, after a petitioner shows that irreparable harm is probable, if a petitioner then meets only the minimum requirements with respect to the merits of its case, the petitioner must also show that the balance of hardships tips sharply in its favor.

While the Supreme Court and the Ninth Circuit have thus imposed a seemingly rigid framework for evaluating the appropriateness of a stay, with certain minimum necessary requirements imposed, the Courts also recognize that a "flexible",

"balancing" approach is always central to the inquiry when a court exercises its discretion in this arena. *Leiva–Perez v. Holder,* 640 F.3d at 966; *Nken,* 556 U.S. at 433–434, 129 S.Ct. 1749.

### Analysis

Defendants contend a stay pending appeal is warranted in this case for two primary reasons: (1) Defendants assert that the money and time spent reinitiating consultation may turn out to be wasted if the Court of Appeals rules in its favor, and that the Court of Appeals would then be unable to provide effective relief for the dissipation of these departmental resources; and (2) Defendants assert that the consultation process may be completed before resolution of their appeal and that abiding by the Court's Order therefore threatens to moot their appeal. Defendants further assert that their appeal raises serious legal questions and that issuance of a stay does not threaten any injury to the Plaintiffs.

### I. Irreparable Harm

■ Defendants acknowledge that "[n]ormally the mere payment of money is not considered irreparable," but contend that here, where their expenditures cannot be recouped, the potential monetary loss should be considered irreparable harm sufficient to meet the probable irreparable harm requirement. *Philip Morris USA v. Scott,* —— U.S. ——, 131 S.Ct. 1, 4, 177 L.Ed.2d 1040 (2010) (holding that the irrevocable loss of "a substantial portion" of a more than $250 million judgment was sufficient to constitute irreparable harm). Defendants contend that reinitiating consultation as ordered will require the Forest Service to expend an estimated $65,000.00. This figure is based on 125 person-days of labor the Forest Service expects will be required to complete consultation. The Forest Service further con-

tends that reinitiating consultation will require it to reshuffle its work priorities and disrupt the natural flow of its work.

Defendants also contend that a finding of probable irreparable harm in this case is appropriate because reinitiating consultation now may render its appeal moot. This argument is premised on Defendants' assertion that the required consultation is estimated to take approximately six months to complete, while resolution of the appeal is estimated to take longer than six months. Defendants contend that reinitiating consultation as ordered thus threatens to frustrate their appeal. Defendants cite cases from the Ninth Circuit wherein the Court deemed moot certain controversies related to Biological Opinions that were rendered obsolete by the agency's issuance, on its own accord, of a superseding Biological Opinion during the pendency of the appeal. *See Grand Canyon Trust v. U.S. Bureau of Reclamation,* 691 F.3d 1008, 1016–17 (9th Cir.2012); *Idaho Dep't of Fish & Game v. Nat'l Marine Fisheries Serv.,* 56 F.3d 1071, 1075–75 (9th Cir.1995). Defendants also cite one case in which a court deemed moot a claim concerning an alleged failure to initiate ESA consultation when the Forest Service, on its own accord, initiated consultation even before its opposition to the plaintiff's motion was due. *Southwest Center for Biological Diversity v. U.S. Forest Service,* 82 F.Supp.2d 1070, 1079 (D.Ariz.2000).[1]

Defendants' mootness argument is not persuasive for several reasons. Defendants admit that "[e]stimating the time to complete the entire consultation is difficult" because "[b]oth the Forest Service and FWS have other ongoing and pending litigation demands that may delay the work necessary to complete consultation."

(Doc. 45–1 at 3–4.) Defendants further note that "[t]here will almost certainly be other consultation on other agency actions that would arise during the six month consultation on the NRLMD for lynx critical habitat." *Id.,* at 5. Defendants also note that even if the Court denies the requested stay, and the consultation is actually completed before the appeal is heard, that they will maintain on appeal that the case is not moot or that one of the exceptions to the mootness doctrine applies.

Also, while certain cases hold that the certainty of mooting an appeal is enough to constitute irreparable harm, *see e.g. Artukovic v. Rison,* 784 F.2d 1354, 1356 (9th Cir.1986) (holding that certain mooting of appeal in extradition proceeding was sufficient to constitute irreparable harm); *Center for Int. Environmental Law v. Office of U.S. Trade Representative,* 240 F.Supp.2d 21, 22–23 (D.D.C.2003) (holding that disclosure of documents in FOIA case that would certainly moot appeal was irreparable harm), whether the potential mooting of a party's appeal is sufficient to constitute irreparable harm in the ordinary case appears to be an open question. For instance, in the bankruptcy arena at least, "[i]t is well settled than an appeal being rendered moot does not itself constitute irreparable harm." *In re Irwin,* 338 B.R. 839, 853 (E.D.Cal.2006) (quoting *In re 203 N. LaSalle St. Pshp.,* 190 B.R. 595, 598 (N.D.Ill.1995)). In addition, Justice Harlan addressing a request for a stay in *Breswick & Co. v. U.S.,* opined that "the matter is cast in no different light when one consequence of staying an injunction pending appeal may be to render the appeal moot in whole or in part." 75 S.Ct. 912, 915 (Harlan, Circuit Justice 1955).

---

1. It is notable that in *Southwest Center* the Court distinguished *Pacific Rivers Council v. Thomas,* 873 F.Supp. 365, 370 (D.Idaho 1995), wherein a controversy over ESA consultation was not deemed moot when "the agency only initiated consultation after being ordered to." *Southwest Center,* 82 F.Supp.2d at 1079.

The same sentiment was expressed in *Dellums v. Smith*, wherein the court concluded that "[t]he possibility that defendants' appeal might become moot absent a stay does not affect the considerations that obtain when the Court is asked to stay its order pending appeal." 577 F.Supp. 1456, 1458 (N.D.Cal.1984) (citing *Breswick*, 75 S.Ct. at 915). *Dellums*, furthermore, is particularly applicable to this case because here, as in *Dellums*, "Defendants identify no harm flowing from mootness apart from their claim of expenditure of scarce ... resources." *Id.* Accordingly, the Court is not persuaded that the potential mooting of Defendants' appeal in this case is sufficient to show probable irreparable harm.

Likewise, Defendants' contention that consultation efforts may result in wasted money and effort are also weak. Defendants apparently realize that consultation on the affect of the designation of lynx critical habitat in national forests is ultimately necessary. Defendants note that "the FWS and Kootenai and Idaho Panhandle National Forests recently completed consultations on revisions of the Kootenai and Idaho Panhandle Forest Plans; including consultation on Canada lynx critical habitat." *Id.*, at 6. Moreover, it appears uncontested that the Forest Service has already entered into a binding Memorandum of Agreement which requires the Forest Service to "consult or confer ... on an existing plan if a new species is listed or critical habitat is designated ..." (Doc. 48 at 15.)

Defendants showing with respect to irreparable harm relies on the potential "loss" of $65,000.00, and the highly indeterminate potential that reinitiating consultation will moot its appeal. It is difficult to see how reinitiating consultation can be regarded as a total loss for the Forest Service (and thus constitute an irreparable harm) when the Forest Service apparently plans to consult with the Fish and Wildlife Service regarding the designation of lynx critical habitat anyway. (See Doc. 45–1 at 6.) It is also difficult to conclude that mooting Defendants' appeal is "the more probable outcome", *Leiva–Perez*, 640 F.3d at 968, when the Forest Service admits that "estimating the time to complete the entire consultation is difficult", the Forest Service has apparently done nothing since May in the way of reinitiating consultation, and Defendants will contend that their appeal is not moot even if the Forest Service happens to complete consultation before the appeal is resolved. In terms of mootness, it is also notable that Plaintiffs have raised issues on cross-appeal which appear highly unlikely to be mooted even if consultation is completed. Therefore, even assuming, that Defendants' monetary loss in this case is enough to constitute irreparable harm, and even assuming that the *potential* mooting of Defendants' appeal should be considered irreparable harm, Defendants' showing on the requisite irreparable harm prong is less than persuasive.

While a showing of probable irreparable harm is a "bedrock requirement" for the issuance of a stay, *Leiva–Perez*, 640 F.3d at 965, and absent such a showing a court need not inquire further, the Court nonetheless will consider the other relevant factors in order to provide the parties a fuller explanation of the Court's reasoning.

## II. Likelihood of Success on the Merits

Defendants contend that they have met the requirement that they make "a strong showing that [they are] likely to succeed on the merits." *Nken*, 129 S.Ct. at 1761. In support of this contention, Defendants note that under Ninth Circuit law, a petitioner may meet this requirement simply by showing "a substantial case on the merits" or that "serious legal questions are raised." *Leiva–Perez*, 640

F.3d at 967–968. Defendants note that a substantial case on the merits can be shown by identifying a Circuit split on an important question of federal law. *Cal. v. Am. Stores Co.*, 492 U.S. 1301, 1305–06, 110 S.Ct. 1, 106 L.Ed.2d 616 (1989) (O'Connor, J., in chambers), *vacated on other grounds*, 495 U.S. 271, 110 S.Ct. 1853, 109 L.Ed.2d 240 (1990); *Pokorny v. Quixtar Inc.*, 2008 WL 1787111, at *1 (N.D.Cal. Apr. 17, 2008). Defendants, citing *Forest Guardians v. Forsgren*, 478 F.3d 1149 (10th Cir.2007), note that a Circuit split exists on the issue of the scope of agency action under the ESA. Accordingly, the Court concludes that Defendants have shown "a substantial case on the merits" and therefore meet the bare minimum merits requirement.

However, the Court finds that while Defendants have met the bare minimum merits requirement, Defendants do nothing more. The precise issues on which Defendants premise their appeal are matters of settled law in the Ninth Circuit, law which is contrary to Defendants' position. For instance, Defendants' contentions with respect to scope of agency action under the ESA is directly contrary to the Ninth Circuit's holding in *Pacific Rivers Council v. Thomas*, 30 F.3d 1050 (9th Cir.1994), *cert. denied* 514 U.S. 1082, 115 S.Ct. 1793, 131 L.Ed.2d 721 (1995). Defendants therefore must persuade the Ninth Circuit to revisit and overrule its prior holding in *Pacific Rivers* if they are to succeed on their appeal. Secondly, Defendants' contentions with respect to standing have been repeatedly rejected by the Ninth Circuit. *See Sierra Forest Legacy v. Sherman*, 646 F.3d at 1161 (9th Cir.2011); *Pacific Rivers Council v. United States Forest Service*, 689 F.3d 1012 (9th Cir.2012). Accordingly, the Court concludes that Defendants have not made a strong showing that they are likely to succeed on the merits. The Court concludes only that Defendants have met the bare minimum requirement as it relates to the merits.

## III. Injury to Plaintiffs' Interest

■ In balancing the other factors against Defendants' unconvincing showings on the first two factors, it is clear that a stay of the judgment is not warranted in this case. It must be emphasized that this is an Endangered Species Act case wherein the Court has concluded that Defendants violated the Endangered Species Act. This fact is critical to the Court's evaluation of whether issuance of a stay will injure Plaintiffs' interest and whether issuance of stay is in the public interest.

■ "Irreparable damage is presumed to flow from a failure properly to evaluate the environmental impact of a major federal action." *Thomas v. Peterson*, 753 F.2d 754, 764 (9th Cir.1985). The Court has already concluded that just such a failure occurred here. Irreparable damage is thus presumed to flow from the ESA violation identified here, and continues to flow each day that consultation is delayed. In addition, Defendants' contention that Plaintiffs' injury can be sufficiently remedied through site-specific challenges flies in the face of the Forest Service's own determination that "effects may occur and/or continue without appropriate management direction at broad scales" AR 2375 at 31, and that "landscape level direction [is] necessary for the survival and recovery of lynx in the northern Rockies ecosystem." AR 0101(a) at 70. Defendants' contention that Plaintiffs have no real injury because it relates to a programmatic procedural violation also misses the mark. The ESA's "procedural requirements are designed to ensure compliance with the substantive provisions." *Thomas*, 753 F.2d at 764. "Indeed, short of assuming that Congress imposed useless procedural safeguards ... we must conclude that the management

plans play some, if not a critical, part in subsequent decisions." *Idaho Conserv. League v. Mumma,* 956 F.2d 1508, 1516 (9th Cir.1992). Thus, in considering "whether issuance of the stay will substantially injure the other parties interested in the proceeding," *Nken,* 556 U.S. at 433–434, 129 S.Ct. 1749, the Court concludes that this factor weighs heavily against issuance of a stay.

## IV. The Public Interest

 The Court must also consider the public interest. Here again, because this case involves an Endangered Species Act violation, the Court's analysis is straight-forward. "Congress has spoken in the plainest of words, making it abundantly clear that the balance has been struck in favor of affording endangered species the highest of priorities." *TVA v. Hill,* 437 U.S. 153, 194, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978). "The language, history, and structure of the ESA demonstrates Congress' determination that the balance of hardships and the public interest tips heavily in favor of protected species." *National Wildlife Federation v. Burlington Northern Railroad,* 23 F.3d 1508, 1511 (9th Cir.1994). Here, Defendants acknowledge that in an Endangered Species Act case, the balance of hardships and the public interest tip heavily in favor of protected species. The only public interest that Defendants assert is the public interest in "the integrity of appellate proceedings." (Doc. 45 at 20.)

 The public's interest in the "integrity" of judicial proceedings includes the public interest in the finality of judgments. That is why stays are generally regarded as "an intrusion into the ordinary processes of administration of judicial review." *Nken v. Holder,* 556 U.S. 418, 427, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009) (quoting *Virginia Petroleum Jobbers Assn. v. Federal Power Comm'n,* 259 F.2d 921, 925

(C.A.D.C.1958)). Moreover, it is not clear that a stay in this case would do anything to forward the public's interest in "the integrity of appellate proceedings" because, as explained above, the absence of a stay here may have no affect on the appellate proceedings. Accordingly, considering the tenuous nature of Defendants' public interest argument, and the fact that the Court has found an Endangered Species Act violation, the public interest weighs heavily against a stay.

Defendants fail to meet the standards necessary for issuance of a stay. Accordingly, Defendants' motion to stay the judgment is denied.

IT IS ORDERED that Defendants' motion to stay the judgment (Doc. 44) is DENIED.