



FILED

Jun 03 2019, 2:16 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Indiana Supreme Court

Supreme Court Case No. 19S-CR-336

## State of Indiana,
*Appellant (Plaintiff)*

—v—

## Ernesto Ruiz,
*Appellee (Defendant)*

---

Argued: February 21, 2019 | Decided: June 3, 2019

Appeal from the Jackson Circuit Court, No. 36C01-1510-F4-25
The Honorable Richard W. Poynter, Judge

On Petition to Transfer from the Indiana Court of Appeals,
No. 36A01-1712-CR-2999

---

### Opinion by Chief Justice Rush

Justices David and Goff concur.
Justice Massa concurs in result.
Justice Slaughter dissents, believing transfer should be denied.

**Rush, Chief Justice.**

If police interrogate someone in custody without providing *Miranda* warnings, the person's interrogated statements are generally inadmissible as evidence against that individual in a criminal trial.

Here, two police officers interrogated Ernesto Ruiz in a secured area at a police station, without providing him *Miranda* warnings. When the State tried to use statements Ruiz made during the interrogation as evidence against him in a criminal trial, he moved to suppress them as inadmissible. The trial court granted the motion.

The State appealed, arguing suppression was contrary to law because Ruiz—although interrogated—was not in custody. Finding substantial, probative evidence that he was in custody, we affirm the trial court's decision.

# Facts and Procedural History

In a small, windowless room in a secured area of the Seymour Police Department, two police officers tag-teamed an interrogation of Ernesto Ruiz, who had been accused of a crime. Neither officer gave him *Miranda* warnings, and multiple times the officers told Ruiz that he was to "sit tight" in the interrogation room.

Later, the State sought to use a video of the interrogation as evidence against Ruiz in a criminal trial. Ruiz moved to suppress it, arguing his statements in the video were inadmissible because they were made during custodial interrogation in the absence of *Miranda* warnings.

The trial court heard evidence on the matter: testimony from the two officers who interrogated Ruiz, and the audio–video recording of the interrogation. The court also heard arguments, which the court considered overnight along with relevant caselaw. The next day, the court heard more testimony and argument, and then granted Ruiz's motion to suppress.

In granting the motion, the court recognized—rightly—that whether Ruiz was in custody turns on objective circumstances.[1] It then determined that the environment was "a police setting" in which multiple officers questioned Ruiz in an accusatory and focused way in a room behind several closed doors. The court observed that although Ruiz went to the police station on his own, he "had to be buzzed into the area or taken into the area of a secure room." And although the first officer told Ruiz he could walk out of the interrogation-room door, the court found that statement, in this specific context, would not make a reasonable person feel free to leave. The court emphasized that after the second officer later entered the room, shut the door, and took on the role of interrogator, Ruiz was not told that he could leave or that the first officer's initial statement remained valid.

The State claimed that it could not proceed without the evidence that had been suppressed. For this reason, and since a jury had already been empaneled, the court declared a mistrial.

The State appealed the suppression decision, *see* Ind. Code § 35-38-4-2(5) (2018), and a panel of the Court of Appeals reversed, concluding the interrogation was not custodial, *State v. Ruiz*, No. 36A01-1712-CR-2999, 2018 WL 3543561, at *5 (Ind. Ct. App. July 24, 2018).

Ruiz petitioned for transfer, which we now grant, vacating the Court of Appeals decision. Ind. Appellate Rule 58(A).

---

[1] The trial court also rightly recognized that statements made in coercive settings implicate Article 1 of the Indiana Constitution. Ruiz made a similar acknowledgment in his motion to suppress, alleging that his rights under the Indiana Constitution were violated alongside his federal constitutional rights. But Ruiz did not advance any state constitutional arguments separate from those based on the Federal Constitution. While the rights protections of the state and federal constitutions often run parallel, they do not always mirror one another exactly, and they derive from independent sources of authority. For these reasons, claims brought under each charter warrant separate arguments. *See, e.g.*, *Litchfield v. State*, 824 N.E.2d 356, 359–64 (Ind. 2005). *See generally* Jeffrey S. Sutton, 51 Imperfect Solutions: States and the Making of American Constitutional Law (2018). Since Ruiz did not develop any arguments separate from those resting on the Federal Constitution, he waived any right to suppression on independent state-law grounds. *Cf. State v. Timbs*, 84 N.E.3d 1179, 1184 (Ind. 2017), *vacated & remanded by* 139 S. Ct. 682 (2019).

# Standard of Review

The State brings this appeal under Indiana Code 35-38-4-2(5), which authorizes the State to appeal an order granting a motion to suppress if the order ultimately prevents further prosecution of at least one charged count. This kind of appeal, we have recognized, is one from a negative judgment. *See, e.g., State v. Brown*, 70 N.E.3d 331, 334–35 (Ind. 2017); *State v. Keck*, 4 N.E.3d 1180, 1183 (Ind. 2014); *State v. Washington*, 898 N.E.2d 1200, 1202–03 (Ind. 2008); *see also State v. Estep*, 753 N.E.2d 22, 24–25, 24 n.5 (Ind. Ct. App. 2001); *State v. Ashley*, 661 N.E.2d 1208, 1211 (Ind. Ct. App. 1995). A negative judgment is the denial of relief to a party on a claim for which that party had the burden of proof. *See Ben-Yisrayl v. State*, 738 N.E.2d 253, 258 (Ind. 2000).

It is true that Ruiz filed the motion to suppress his statements. But no matter Ruiz's burden to support his challenge to the statements' admission,[2] the trial court, in granting his motion, necessarily determined that the State failed to carry its countervailing burden to prove that the statements were admissible. *See Colorado v. Connelly*, 479 U.S. 157, 167–69 (1986); *Lego v. Twomey*, 404 U.S. 477, 488–89 (1972). Specifically, since Ruiz brings his challenge under the Federal Constitution, the State had to show

---

[2] *See United States v. Artis*, No. 5:10-cr-15-01, 2010 WL 3767723, at *4 & n.2 (D. Vt. Sept. 16, 2010) (unreported table decision) (observing lack of clarity in and disagreement over the burden to establish whether the defendant was subjected to custodial interrogation). *Compare United States v. Jorgensen*, 871 F.2d 725, 729 (8th Cir. 1989) (requiring defendant to show custodial interrogation), *United States v. Lawrence*, Nos. 88-2056, -2086, -2087, -2109, -2135, 1989 WL 153161, at *5–6 (6th Cir. Dec. 18, 1989) (unpublished table decision) (requiring defendant to show by a preponderance of the evidence that he was subjected to custodial interrogation), *United States v. Davis*, 792 F.2d 1299, 1309 (5th Cir. 1986) (requiring defendant to prove "that he was under arrest or in custody"), *and United States v. Peck*, 17 F. Supp. 3d 1345, 1354 (N.D. Ga. 2014) (collecting cases), *with United States v. Dudley*, No. 18-cr-286-WJM, 2019 WL 1403115, at *2 (D. Colo. Mar. 28, 2019) (requiring defendant to present "evidence or allegations sufficient to support a motion to suppress"), *United States v. Miller*, 382 F. Supp. 2d 350, 361–62 (N.D.N.Y. 2005) (requiring defendant to allege custodial interrogation in the absence of *Miranda* warnings), *and United States v. Gilmer*, 793 F. Supp. 1545, 1555 (D. Colo. 1992) (requiring defendant to point to some evidence that his statements were made in violation of his constitutional rights). *See generally United States v. Charles*, 738 F.2d 686, 692 (5th Cir. 1984), *abrogated on other grounds by United States v. Bengivenga*, 845 F.2d 593, 596–97 (5th Cir. 1988) (en banc); *United States v. Crocker*, 510 F.2d 1129, 1135 (10th Cir. 1975), *overruled on other grounds by United States v. Bustillos-Munoz*, 235 F.3d 505, 516 (10th Cir. 2000).

by a preponderance of the evidence that Ruiz voluntarily waived his *Miranda*-protected rights before he made the statements. *See United States v. Charles*, 738 F.2d 686, 696 (5th Cir. 1984), *abrogated on other grounds by United States v. Bengivenga*, 845 F.2d 593, 596–97 (5th Cir. 1988) (en banc); *United States v. Miller*, 382 F. Supp. 2d 350, 362 (N.D.N.Y. 2005); *Smith v. State*, 689 N.E.2d 1238, 1246 & n.11 (Ind. 1997). The State also bore the ultimate burden at trial to prove guilt beyond a reasonable doubt. *See Taylor v. State*, 587 N.E.2d 1293, 1301 (Ind. 1992).

So, since the suppression order rested on the State's failure to carry its burden to prove the statements' admissibility, and that decision precludes the State from further prosecuting a criminal charge, which the State had the burden to prove, the State appeals from a negative judgment. Accordingly, the State must show that the trial court's decision was contrary to law—meaning that the evidence was without conflict and all reasonable inferences led to a conclusion opposite that of the trial court. *See Brown*, 70 N.E.3d at 335; *State v. McCaa*, 963 N.E.2d 24, 29 (Ind. Ct. App. 2012), *trans. denied*. The State cannot make this showing if there is substantial, probative evidence supporting the suppression ruling. *See Brown*, 70 N.E.3d at 335.

Here, the trial court's suppression decision was proper if Ruiz was under custodial interrogation, which triggers *Miranda*. Because the State admits that Ruiz was under interrogation, we focus our review on the trial court's determination that Ruiz was in custody.

The custody inquiry is a mixed question of fact and law: the circumstances surrounding Ruiz's interrogation are matters of fact, and whether those facts add up to *Miranda* custody is a question of law. *See Thompson v. Keohane*, 516 U.S. 99, 112–13 (1995). We defer to the trial court's factual findings, without reweighing the evidence; and we consider conflicting evidence most favorably to the suppression ruling. *State v. Quirk*, 842 N.E.2d 334, 340 (Ind. 2006). But we review de novo the legal question of whether the facts amounted to custody. *Brown*, 70 N.E.3d at 335.

# Discussion and Decision

Under *Miranda v. Arizona*, if Ruiz was under "custodial interrogation," the police were required to give him certain warnings about his rights, and the absence of those warnings precludes the use of his statements to prove guilt. 384 U.S. 436, 444 (1966).

The State acknowledges that Ruiz was under police interrogation but contends that he was not in custody. Custody under *Miranda* occurs when two criteria are met. First, the person's freedom of movement is curtailed to "the degree associated with a formal arrest." *Maryland v. Shatzer*, 559 U.S. 98, 112 (2010) (quoting *New York v. Quarles*, 467 U.S. 649, 655 (1984)). And second, the person undergoes "the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*." *Howes v. Fields*, 565 U.S. 499, 509 (2012).

We hold that the State did not carry its burden here to show that the trial court's ruling was contrary to law. The record includes substantial, probative evidence of circumstances that, taken altogether, met both criteria of *Miranda* custody. We'll address each in turn.

## I. The totality of objective circumstances surrounding the interrogation would make a reasonable person feel not free to end the questioning and leave.

Under *Miranda*, freedom of movement is curtailed when a reasonable person would feel not free to terminate the interrogation and leave. *Howes*, 565 U.S. at 509. This freedom-of-movement inquiry requires a court to examine the totality of objective circumstances surrounding the interrogation—such as the location, duration, and character of the questioning; statements made during the questioning; the number of law-enforcement officers present; the extent of police control over the environment; the degree of physical restraint; and how the interview begins and ends. *See id.*; *Oregon v. Mathiason*, 429 U.S. 492, 493 (1977) (per

curiam); *United States v. Infante*, 701 F.3d 386, 396 (1st Cir. 2012); *Sprosty v. Buchler*, 79 F.3d 635, 641 (7th Cir. 1996).

Here, the State argues that Ruiz's freedom of movement was not curtailed and thus he was not in custody. The State points to certain evidence in support: Ruiz provided his own transportation to the police station; the first interrogating officer told him, "you don't have to talk to me" and "you can get up and walk out that door at any time"; Ruiz sat near the unlocked interview-room door and had not been arrested; the interrogation lasted less than an hour; and Ruiz left unhindered after it was over.

This evidence does indeed point toward no custody. But substantial, probative evidence in the record points in the opposite direction and supports the trial court's suppression ruling.

To start, the time and place of the interrogation were directed by Detective Greg O'Brien, who showed up at Ruiz's home, informed Ruiz of the allegations against him, explained that he "needed to interview" Ruiz, and "asked him to come up to the police station." Importantly, Detective O'Brien did not inform Ruiz that any other time or place would suffice for the interview. *Cf. Mathiason*, 429 U.S. at 493 (defendant returned officer's phone calls to set up a meeting, and officer asked defendant where it would be convenient to meet).

Ruiz came to the police station shortly after getting dressed. Detective O'Brien then led Ruiz through various sections of the station house: from the lobby through a door that required a key fob to enter; into a secured area containing the police squad room; "up the elevator and the stairs"; through a second keyed door that was propped open; and into a small interview room with no windows and a single door, which the officers closed for the interrogation. Although he was not handcuffed or locked inside the interrogation room, Ruiz was physically and visually cabined to the small compartment with officers positioned near the single, shut door.

Inside the interrogation room, Ruiz was at first alone with Detective O'Brien, who began the questioning. But after about thirteen minutes, Detective Troy Munson entered, closed the door, and became the primary

interrogator. At this time, and through the end of the interrogation, the police outnumbered Ruiz in the room two-to-one.

When Detective O'Brien started to question Ruiz, he told Ruiz—a single time—that he could walk out "that door." But the trial court did not err in concluding that this statement was not enough to make a reasonable person feel free to leave, for three reasons.

First, the officers told Ruiz to "sit tight" multiple times, belying any prior indication that Ruiz was free to go.

Second, the circuitous path by which Detective O'Brien took Ruiz into the interrogation room drew a labyrinthine exit route with many obstructions to egress. One of the doors Detective O'Brien led Ruiz through required a key fob when heading toward the interrogation room. And nobody told Ruiz that it was unlocked going the opposite direction.

Finally, and most importantly, the police significantly undercut any initial message of freedom when they dramatically changed the interrogation atmosphere. Shortly after Detective O'Brien began the interview, a second officer—whom Ruiz had not yet met—entered the interview room; shut the door; and took over as the main, and more aggressive, interrogator. In this way, the police completely recast the interrogation, subverting the force and applicability of Detective O'Brien's earlier walk-out-that-door statement. And at no point did either officer say anything to preserve that statement's validity.

Other statements the officers said or omitted, along with the character of their questioning, point toward curtailed freedom of movement. Detective O'Brien did not tell Ruiz that he didn't have to respond to other detectives who may question him. Nor did the detectives tell Ruiz that he wasn't under arrest; that he could end the interrogation at any time; or that he was free to leave once Detective Munson suddenly injected himself into the interrogation and began aggressive questioning. *Cf. Luna v. State*, 788 N.E.2d 832, 833 (Ind. 2003) (affirming suppression decision where defendant was told multiple times that he did not have to talk to the police, that he was not under arrest, and that he was free to leave at any time).

The officers did, however, repeatedly tell Ruiz to explain to them what happened, coaxing him to "[t]ell us now so that we know that you're being honest with us and . . . not lying." The officers were explicit that they believed Ruiz had engaged in the accused conduct. And their questions were accusatory—not exploratory, like ones to identify suspects in the early stages of an investigation. Detective Munson emphasized this with deception—saying that the person who made the accusations had passed a lie-detector test.

The questioning was also prolonged, lasting almost an hour. Although the length of an interview, alone, does not determine whether a person is in custody, the questioning here was sustained and relatively drawn out, especially compared to roadside traffic-stop questioning. *See Berkemer v. McCarty*, 468 U.S. 420, 437–38 (1984). And the officers continued the interrogation past the time they knew Ruiz was supposed to pick up his daughter, telling him to "sit tight" until they were satisfied. Indeed, the interrogation did not end until after the officers had extracted incriminating remarks.

Altogether, the circumstances surrounding the interrogation add up to a situation in which a reasonable person would not feel free to end the interrogation and leave. So, the record supports the conclusion that the curtailment-of-movement criterion was met.

As custody turns on the totality of the circumstances, the conditions bearing on the curtailment-of-movement inquiry also factor into the second custody inquiry: whether the person was subjected to coercive pressures that necessitate *Miranda* safeguards.

## II. The station-house interrogation included the coercive pressures that drove *Miranda*.

The second custody criterion asks whether the circumstances exert the coercive pressures that drove *Miranda*. *Shatzer*, 559 U.S. at 112. When the case involves "the paradigm example of interrogating a suspect at a police station," the answer to this question is generally "obvious, in the absence of unusual facts." *United States v. Ellison*, 632 F.3d 727, 729 (1st Cir. 2010);

*see Berkemer*, 468 U.S. at 439–40. The answer is less obvious for situations outside the classic *Miranda* station-house paradigm—such as a traffic or *Terry* stop; or questioning individuals in their usual environment, such as inmates in prison. *Ellison*, 632 F.3d at 729; *see Shatzer*, 559 U.S. at 112; *Berkemer*, 468 U.S. at 439–40.

The State devotes little attention to this specific custody inquiry. But it does argue that Ruiz "was never coerced to cooperate in exchange for freedom." We disagree, as the record includes substantial, probative evidence to the contrary. And overall, the station-house questioning here both resembles the *Miranda* paradigm and exhibits the coercive pressures that *Miranda* targeted.

The interrogation here was not brief roadside questioning, *see Berkemer*, 468 U.S. at 439, or interrogation in the "low atmospheric pressure" of a suspect's typical surroundings, *Ellison*, 632 F.3d at 730. Rather, it took place at the station house in an isolated room—removed from Ruiz's friends, family, and familiar environment, and with multiple officers employing various interrogation tactics for almost an hour, trying to convince their suspect to incriminate himself.

The officers also applied multiple layers of subtly coercive forces that, together and in the absence of *Miranda*'s safeguards, would impair their suspect's free exercise of the privilege against self-incrimination.

First, after the interrogation began, the officers kept Ruiz "off balance" in the already unfamiliar environment. *See Miranda*, 384 U.S. at 455. Detective Munson (whom Ruiz had not yet met) entered the room and assumed the role of main interrogator, with a more aggressive style than that of Detective O'Brien.

Detective Munson then used subterfuge, lying to Ruiz about the accuser having taken a lie-detector test. *See id.* at 448–57 (describing pressures that create coercion, including use of deceptive stratagems). He also counseled Ruiz that the alleged conduct was "not a big deal" but that Ruiz would "look bad" if he wasn't forthcoming about it.

And the officers intimated that Ruiz's fate was in their hands. They suggested that if Ruiz didn't talk right then about what he had done, they

would make things worse for him in the future—because they would worry that he wasn't honest and that he had done "something more" than the alleged wrongdoing. *See Illinois v. Perkins*, 496 U.S. 292, 297 (1990) ("Questioning by captors, who appear to control the suspect's fate, may create mutually reinforcing pressures that . . . will weaken the suspect's will . . . .").

Other pressures piled on. The officers said that they "knew" the allegations were true; they engaged in prolonged, persistent, and accusatory questioning that focused on encouraging Ruiz to admit to the officer's description of the wrongdoing; and they instructed Ruiz to stay put in the interrogation room while the time to pick up his daughter passed.

These types of coercive pressures, applied in a station-house interrogation, are precisely what induced *Miranda*'s warning requirements. So, the second custody criterion, like the first, was met.

It is true that a person is not in custody simply because he is questioned at a police station, or because he is an identified suspect, or because he is in a coercive environment. *See Mathiason*, 429 U.S. at 495. And here, certain elements, taken in isolation, may suggest an inference of no custody. But custody depends on the totality of the circumstances surrounding the interrogation. In this case, the totality of the circumstances, supported by substantial, probative evidence in the record, amount to *Miranda* custody. So, the State failed to show that the trial court's suppression ruling was contrary to law.

## Conclusion

The Fifth Amendment secures a suspect's right against self-incrimination. And to protect this right from the inherently compelling pressures of custodial interrogation, *Miranda* requires police to provide certain safeguards. Here, the police did not provide those safeguards to Ruiz before interrogating him at the station house.

Because the totality of objective circumstances evidenced on this record supports the trial court's conclusion that the interrogation was custodial, we affirm the suppression of Ruiz's statements.

David and Goff, JJ., concur.
Massa, J., concurs in result.
Slaughter, J., dissents, believing transfer should be denied.

ATTORNEYS FOR APPELLANT
Curtis T. Hill, Jr.
Attorney General of Indiana

Henry A. Flores, Jr.
Laura R. Anderson
Tyler G. Banks
Deputy Attorneys General
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Andrew J. Baldwin
Mark E. Kamish
Baldwin Kyle & Kamish, P.C.
Franklin, Indiana