

FILED

May 14 2020, 8:45 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Supervising Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Joel C. Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

State of Indiana,

*Appellant-Plaintiff,*

v.

April D. Glaze,

*Appellee-Defendant.*

May 14, 2020

Court of Appeals Case No.
19A-CR-1735

Appeal from the Putnam Circuit
Court

The Honorable Matthew L.
Headley, Judge

Trial Court Cause No.
67C01-1807-F1-168

**Sharpnack, Senior Judge.**

# Statement of the Case

[1] The State of Indiana appeals the trial court's partial grant of April Glaze's motion to suppress evidence. We affirm.

# Issue

[2] The State raises one issue, which we restate as: whether the trial court erred in partially granting Glaze's motion to suppress.

# Facts and Procedural History

[3] On April 4, 2018, Detective Troy Cobb of the Indiana State Police and Investigator David Meadows of the Putnam County Prosecutor's Office interrogated Glaze at the prosecutor's office as part of an ongoing investigation into the molestation of Glaze's daughters. The interrogation was recorded.

[4] We discuss the circumstances of the interrogation in more detail below, but Cobb had driven Glaze to the office, with the understanding that he would return her home afterwards. Twenty-four minutes into the interview, Glaze stated, "I just want to get this over with Dave . . . I want to go back home." Tr. Ex. Vol., State's Ex. 1, 23:24. Meadows indicated they intended to take her home, but they instead continued to question her. The interrogation continued, with several breaks, for another hour, after which Cobb took Glaze home.

[5] On July 31, 2018, the State charged Glaze with several felonies, including child molesting and promotion of human trafficking of a minor. On August 23, 2018, Glaze filed a Notice of Defense of Insanity and a request for funds to hire

a psychiatrist or psychologist to assist her in her defense. The trial court granted Glaze's request and further appointed two experts to independently examine her.

[6] On March 11, 2019, Glaze filed a Motion to Suppress Evidence, asking the court to suppress all statements she made during the investigation of this case. On April 29, the trial court held an evidentiary hearing on suppression and competency issues. The State subsequently filed briefs separately addressing the suppression and competency issues.

[7] On July 7, the trial court issued two orders: the first stated that Glaze was competent to stand trial; and the second granted in part Glaze's motion to suppress. Specifically, the court "suppresse[d] all statements and any subsequent investigation that came out of these statements made by [Glaze] after [she] requested to go home [during the April 4, 2018 interrogation]." Appellant's App. Vol. II, p. 79. This appeal followed. Upon the State's motion, the trial court has stayed further proceedings pending the outcome of this appeal.

## Discussion and Decision

[8] The State appeals the trial court's suppression order pursuant to Indiana Code section 35-38-4-2(5) (2015), which allows the State to appeal "from an order granting a motion to suppress evidence, if the ultimate effect of the order is to preclude further prosecution of one (1) or more counts of an information or indictment." On appeal, the State argues the trial court should not have

suppressed the statements Glaze made after she said she wanted to go home, because: (1) Glaze was not in custody, and as a result her *Miranda* rights were not implicated; and (2) even if Glaze was in custody, she did not unequivocally express her right to remain silent.

We first address whether Glaze was in custody when she told Detective Cobb and Investigator Meadows that she wanted to go home. The custody inquiry is a mixed question of fact and law. *State v. Ruiz*, 123 N.E.3d 675, 679 (Ind. 2019), *cert. pending*. We defer to the trial court's factual findings, without reweighing the evidence, and we consider conflicting evidence most favorably to the suppression ruling. *Id.* But we review de novo the legal question of whether the facts establish that a suspect was in custody. *Id.*

Custody, for purposes of *Miranda*, occurs when two criteria are met. *Id.* at 680. "First, the person's freedom of movement is curtailed to 'the degree associated with a formal arrest.'" *Id.* (quoting *Maryland v. Shatzer*, 559 U.S. 98, 112, 130 S. Ct. 1213, 1224, 175 L. Ed. 2d 1045 (2010)). Freedom of movement is curtailed when a reasonable person would not feel free to terminate the interrogation and leave. *Id.* "[S]econd, the person undergoes 'the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*.'" *Id.* (quoting *Howes v. Fields*, 565 U.S. 499, 509, 132 S. Ct. 1181, 1190, 182 L. Ed. 2d 17 (2012)).

The initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the

interrogators or the person being questioned. *Stansbury v. California*, 511 U.S. 318, 323, 114 S. Ct. 1526, 1529, 128 L. Ed. 2d 293 (1994). The test is how a reasonable person in the suspect's shoes would understand the situation, based on the totality of the circumstances surrounding the interrogation. *Loving v. State*, 647 N.E.2d 1123, 1125 (Ind. 1995). The United States Supreme Court has identified only one subjective characteristic relevant to the custody analysis: whether the suspect is a child if the child's age "was known to the officer at the time of the interview, or would have been objectively apparent to any reasonable officer, . . . ." *J.D.B. v. North Carolina*, 564 U.S. 261, 274, 131 S. Ct. 2394, 2404, 180 L. Ed. 2d 310 (2011).[1]

[12] The Indiana Supreme Court has identified some of the factors that may be considered under the totality of objective circumstances: "the location, duration, and character of questioning; statements made during the questioning; the number of law-enforcement officers present; the extent of police control over the environment; the degree of physical restraint; and how the interview begins and ends." *Ruiz*, 123 N.E.3d at 680.

[13] The events leading to the April 4, 2018 interrogation are pertinent to our custody inquiry. Two years before the interrogation, Glaze's then-husband, Robert Glaze ("Robert"), and Paul Crowder had been convicted of offenses

---

[1] Glaze asks the Court to extend the custody analysis to consider the subjective factor of whether a suspect has an intellectual disability, if the disability "is known or obvious to the police officers" conducting the questioning. Appellee's Br. p. 23. Conversely, the State argues the trial court erred by considering Glaze's intellectual disability in the custody analysis. We need not address these issues to resolve the State's appeal.

related to the molestation and trafficking of Glaze's two daughters. Glaze was on probation for convictions related to the investigation into Robert and Crowder, and the Department of Child Services had custody of Glaze's daughters.

[14] The April 4 interrogation occurred after law enforcement had received additional information indicating Glaze may have been directly involved in the offenses against the children. Investigator Meadows had previously questioned Glaze several times in connection with the investigation into Robert's and Crowder's offenses.

[15] Next, we turn to the interrogation itself, considering the factors stated by the Indiana Supreme Court in *Ruiz*. Starting with the location of the interrogation, Detective Cobb picked up Glaze at her home and drove her to Investigator Meadows' office in the Putnam County Courthouse. Glaze did not have a car and depended on Detective Cobb for a ride home. Cobb and Meadows put Glaze in an interview room. It appears from the recording of the interrogation that the room was not very large, because Cobb and Meadows sat across from Glaze at a table. These facts weigh in favor of a determination that Glaze was in custody.

[16] On a related note, although the interrogation did not occur at a police station, law enforcement still had full control over the interview room. Meadows and Cobb directed Glaze into the room, told her where to sit, and closed the door at

the beginning of the interrogation. When Meadows and Cobb took breaks, they left the room and closed the door behind them.

[17] We next consider the character of the questioning. Meadows read Glaze an advisement of her Miranda rights, after she demonstrated difficulty in reading the advisement form by herself. Meadows asked her to sign the form, if she understood it, and Glaze signed. Meadows and Cobb both told Glaze she could end the questioning at any time, and Meadows stated Glaze was not under arrest.

[18] Next, Meadows reminded Glaze that she was on probation for offenses arising out of Robert's and Crowder's molestations and trafficking of her daughters, and he stated that she had previously minimized, or failed to fully discuss, Robert's criminal activities. Meadows stated he thought Glaze's daughters had experienced more abuse than had been previously disclosed, and he further stated he needed more information from Glaze.

[19] After a brief discussion of who else may have interacted with the girls, Meadows told Glaze he wanted the children to be safe. Glaze responded that she also wanted them to be safe and wanted them to come home. She began to cry, and Meadows repeatedly stated that he needed her help. He also discussed steps Glaze had taken to regain custody of her daughters, including obtaining counseling and seeking employment. Meadows then told Glaze, "the next part is . . . to get this all out." Tr. Ex. Vol., State's Ex. 1, at 8:22-8:29. He also said, "If you truly love them . . . you're going to help us do that." *Id.* at 8:30. A

reasonable person would have concluded that participating in the interrogation was a necessary part of the process of regaining custody of her children.

[20] Meadows further accused Glaze of wrongdoing, stating "I think you probably did have some idea of what was going to happen" when her daughters went with men who molested them. *Id.* at 14:24. Glaze denied knowing what Robert and Crowder were doing with the children, but Meadows responded that she knew Robert was molesting the children, having caught him with them. He stated, "you knew it was wrong." *Id.* at 17:10. Meadows also stated Glaze and Robert "had nothing but sex on your mind – whether it was with the girls . . . ." *Id.* at 20:22. He further stated, "you knew they were being sold." *Id.* at 21:59.

[21] The United States Supreme Court has stated, "An officer's knowledge or beliefs may bear upon the custody issue if they are conveyed, by word or deed, to the individual being questioned." *Stansbury*, 511 U.S. at 325, 114 S. Ct. at 1530. "The weight and pertinence of any communications regarding the officer's degree of suspicion will depend upon the facts and circumstances of the particular case." *Id.* Meadows accused Glaze of participating in the molestation and trafficking of her daughters, and a reasonable person, being faced with such serious accusations, may have believed she was in custody to answer for those offenses.

[22] The above factors support the trial court's determination that Glaze was in custody. Balanced against those factors, the State notes: (1) Cobb and

Meadows had told Glaze at the beginning that they would stop the questioning if she wished; (2) the interview lasted only twenty-four minutes before Glaze asked to be taken home and was rebuffed; (3) Glaze was not handcuffed; and (4) Cobb ultimately took Glaze home when she asked for a lawyer, one hour after she had first asked to be taken home.

[23] Nevertheless, under the totality of the circumstances, including being transported to the prosecutor's office, being questioned in a small room under the control of law enforcement, being led to believe that participation in the interrogation was part of the process of getting her children back, and being accused of committing serious crimes, we conclude a reasonable person would have concluded his or her freedom of movement was curtailed, and he or she was being subjected to coercive pressures similar to a police station interview. The trial court did not err in concluding Glaze was in custody when she asked to be taken home and was refused. *See Ruiz*, 123 N.E.3d at 681 (Ruiz was in custody during interrogation; despite being told he was free to leave at any time, officers had directed Ruiz to appear at the police station, he was questioned in a small room by two officers, and they accused him of serious crimes); *see also Bean v. State*, 973 N.E.2d 35, 43 (Ind. Ct. App. 2012) (Bean was in custody when he was questioned by police; although he was told he was free to leave at any time, the police drove Bean to the station, he was subjected to aggressive questioning, including accusations of child molesting, and he was advised of his *Miranda* rights at the beginning of the interrogation); *trans. denied*.

[24] Having determined that Glaze was in custody for purposes of *Miranda* when she stated she wanted the interview to be over and she wanted to be driven home, we must next determine whether the trial court erred in determining that Glaze had exercised her right to remain silent at that point, and the interrogators disregarded that right.[2]

[25] For purposes of this issue, the State appeals from a negative judgment. *Ruiz*, 123 N.E.3d at 679. Accordingly, the State must show the trial court's decision was contrary to law, "meaning that the evidence was without conflict and all reasonable inferences led to a conclusion opposite that of the trial court." *Id.* To the extent we consider matters of law, including constitutional questions, our review is de novo. *Tiplick v. State*, 43 N.E.3d 1259, 1262 (Ind. 2015).

[26] On the question of whether a suspect has exerted the right to remain silent, the Indiana Supreme Court has stated:

> An assertion of the *Miranda* right to remain silent must be clear and unequivocal. In determining whether a defendant has asserted this right, the statements are considered as a whole. Mere expressions of reluctance to talk do not invoke the right to remain silent. This Court has held several times that raising doubts or expressing concern about continuing followed by

---

[2] Glaze argues that her waiver of her *Miranda* rights at the beginning of the interrogation was invalid due to her intellectual disability. We do not need to address this argument to resolve the State's appeal. In addition, Glaze's Appellee's Brief does not present a cross-appeal challenge to the admission of statements Glaze made during the interrogation before she stated she wanted to be taken home.

> continued dialogue do not unambiguously assert the right to
> remain silent.

*Wilkes v. State*, 917 N.E.2d 675, 682 (Ind. 2009) (citations omitted).

[27] In *Wilkes*, officers questioned Wilkes in connection with multiple murders. During the interrogation, and before he ultimately made incriminating statements, Wilkes told the officers, "I don't want to talk about it no more. I don't want to think about it. Cause right now I'm still high." *Id.* He also said, "Well, I have, I'm still high and you're going to go away," and "No I can end this today with me . . . ." *Id.* After he made those statements, the interrogation continued. The Indiana Supreme Court concluded Wilkes had not unequivocally expressed his right to remain silent.

[28] Similarly, in *Clark v. State*, 808 N.E.2d 1183, 1190 (Ind. 2004), police officers questioned Clark in connection with a murder. Clark made the following statements: "This is crazy. Y'all might as well send me across the street (referring to jail)," "Please, man, you might as well take me across the street," and "You already tryin' to charge me with this. So leave me alone and take me over here." *Id.* After he made those statements, Clark continued to speak with the officers. The Indiana Supreme Court concluded Clark had not sufficiently invoked his *Miranda* rights.

[29] By contrast, in *Risinger v. State*, 137 N.E.3d 292, 295 (Ind. Ct. App. 2019), *trans. denied*, two officers questioned Risinger about his involvement in a murder. Nineteen minutes into the interview, Risinger stated, "I'm done talking." *Id.*

The detectives continued to question him. Later in the interview, Risinger repeated that he was "done talking," but the questioning continued. *Id.* at 295-96. A panel of this Court determined that Risinger had unequivocally exercised his right to remain silent, and the interrogating officers had not "scrupulously honored" his rights. *Id.* at 298.

[30] Turning to Glaze's case, we conclude the circumstances more closely resemble the facts of *Risinger* rather than the facts of *Wilkes* and *Clark*. Cobb had driven Glaze to the prosecutor's office from her home, a distance of twenty-five miles. Cobb had agreed to drive Glaze home at the end of the questioning.

[31] At the beginning of the interrogation, Meadows and Cobb both told Glaze, who is cognitively impaired, that she had the right to stop the questioning at any time. Twenty-four minutes into the interview, Cobb suggested that they should take a break and give Glaze time to think. Glaze stated, "I just want to get this over with Dave . . . I want to go back home." Tr. Exhibit Vol., State's Ex. 1, 23:24. Cobb said, "I intend to take you back home. But we're gonna – we're going to get this entire thing out. Because I'm not gonna have six or seven or eight conversations with you. Are you Troy?" Id. at 23:32 Troy responded, "Nope." *Id.* A minute later, Meadows and Cobb took a short break and then resumed questioning Glaze. About thirty minutes later, Meadows and Cobb took another break. While Glaze was alone in the room, she was in an emotional state and stated, "They won't take me home." *Id.* at 1:08. She next stated out loud she would just tell them she was done with the questioning.

The interrogation ultimately ended when Glaze specifically requested an attorney, but by that point Glaze had already unequivocally expressed an intent to end the questioning. The officers rejected her request to be taken home, stating that they were going to finish up the questioning that day. We conclude that the officers failed to "scrupulously honor" Glaze's exercise of her right to remain silent, as described in *Risinger*, and the trial court did not err in suppressing statements Glaze made after she stated that she wanted to end the questioning and go home.

# Conclusion

For the reasons stated above, we affirm the judgment of the trial court.

Affirmed.

Kirsch, J., and Robb, J., concur.